# WESTERN UNION TELEGRAPH COMPANY *v.* BOROUGH OF NEW HOPE.

## ERROR TO THE SUPERIOR COURT OF THE STATE OF PENNSYLVANIA.

No. 101, Argued December 2, 3, 1902.—Decided January 5, 1903.

An ordinance of the borough of New Hope, Pennsylvania, imposing an annual license fee of one dollar per pole and two dollars and a half per mile of wire on the telegraph, telephone and electric light poles within the limits of the borough is not a tax on the property of the telegraph company owning the poles and wires, or on its transmission of messages or on its receipts for such transmission, but is a charge in the enforcement of local governmental supervision, and as such is not in itself obnoxious to the commerce clause of the Federal Constitution.

As the elements entering into such a charge are various, and as in this case the courts of Pennsylvania have decided that the charge imposed by the ordinance is reasonable in the circumstances and the ordinance valid, this court does not feel justified in holding that conclusion to be so manifestly erroneous as to require revision.

By an ordinance passed in 1894, the borough of New Hope, Pennsylvania, imposed an annual license fee of one dollar per pole and two dollars and a half per mile of wire on the telegraph, telephone, and electric light poles and wires within its limits. The Western Union Telegraph Company had constructed prior thereto and had since maintained and operated a line of telegraph poles and wires through the borough, and this was an action brought in the Court of Common Pleas of Bucks

County, in that State, against the company to recover license fees for the four years commencing with 1895. The case came on for trial before the court and a jury, and plaintiff put in evidence the ordinance in question, and it was agreed "between the parties that for the year beginning October 1, 1895, there were seventy-five poles and twenty miles of wire, and for the three succeeding years, beginning October 1, 1896, there were thirty-six poles and twelve miles of wire maintained by the defendant in said borough." Plaintiff then rested, and defendant offered evidence tending to show that the wires were used as through wires, for the transmission of messages between the different States, and the United States and foreign countries; that the company had no office at New Hope, which it operated itself, but that the Philadelphia and Reading Railroad Company handled the business there, and transferred it to the Western Union at Philadelphia; that no part of the business that went to or from New Hope went over these lines of wires and poles; and that the local business handed to the Western Union at Philadelphia amounted to from about seven to seven and one half dollars per month. The evidence further tended to show that the cost value of its lines through New Hope was about $372, and that the cost of inspection, repairs and maintenance of the plant of the company had averaged for thirteen years one dollar and forty-nine and one half cents per wire per annum; that since October, 1894, the borough had not expended any money on account of the poles and wires of the company; that its expenditures were for repairing streets, street lamps, moderate sums in payment of official services, etc., and that when on holidays the burgess saw fit to appoint a policeman he often called on the constable, who was generally paid $2.50 per day. A lineman testified that during those years the borough never did anything, to his knowledge, "in the way of inspecting or repairing or removing or anything else in connection with the poles and wires of those telegraph companies." Defendant contended that the requirement of payment of the license fee in question amounted to a regulation of commerce, and that the ordinance was therefore void.

The court left it to the jury to find whether the license fee

exceeded what was reasonable under the circumstances. The jury returned a verdict in favor of the plaintiff, and judgment was rendered thereon, which on error to the Superior Court was affirmed. 16 Pa. Superior Ct. Rep. 306. The Supreme Court of Pennsylvania refused to allow an appeal to that court.

*Mr. Silas W. Pettit,* for plaintiff in error, with whom *Mr. H. B. Gill, Mr. Robert M. Yardley, Mr. George H. Fearons* and *Messrs. Brown & Wells* were on the brief, conceded that the court below correctly stated the result of the decisions of the Supreme Court of Pennsylvania; did not argue that the borough of New Hope might not supervise the location of the poles erected to sustain the telegraph wires, require them to be properly painted, and make such inspection of them as might be necessary to protect public welfare and for the cost of such regulation and supervision impose a reasonable license fee, or in other words, that the municipality might not make a telegraph company repay to it the expense to which it has been put by reason of the said telegraph company's occupation of its highways. They contended, however, that any license fee in excess of the amount necessary to so reimburse the municipality is unreasonable, and is also a tax upon, and regulation of, the interstate commerce carried on by means thereof, against which the company can be protected by the Supreme Court of the United States.

If the rule adopted by Pennsylvania and put in practice by numerous of her municipalities should be extended throughout that State and other States, the aggregate of the pole and wire tax thus imposed on telegraph companies would exceed all other taxation and exceed the net revenue of the companies. In fact, the total amount of such taxes has now assumed very grave proportions and is yearly increasing, and, inasmuch as the courts of Pennsylvania have imposed no restrictions established by the authorities in respect to such license charges upon other kinds of property or occupations, the telegraph company is helpless, except in so far as the Federal courts will protect it by establishing some rule to which the municipalities must conform.

In support of this contention and as to how reasonableness of charge should be measured, the briefs cited: Cooley on Const. Lim. 4th ed. § 201; Cooley on Taxation, 4th ed. § 408; Dillon on Mun. Corp. 4th ed. § 768; *Laundry License Case,* 22 Fed. Rep. 701; *North Hudson Ry. Co.* v. *Hoboken,* 41 N. J. L. (12 Vroom) 71; *Taylor Borough* v. *Postal Tel. Co.,* 202 Pa. St. 583, 584. That under the guise of the power to regulate, a city cannot exercise a power to tax: *State* v. *Hoboken,* 4 Vroom, 280; *New York* v. *Second Ave. R. R. Co.,* 32 N. Y. 261; *Cincinnati* v. *Bryson,* 15 Ohio, 625; *Mays* v. *Cincinnati,* 1 Ohio St. 268; *Dunham* v. *Rochester,* 5 Cowen, 462.

The decisions of this court in regard to the ordinance of the city of St. Louis were cited as not sustaining the claim of the borough of New Hope. *St. Louis* v. *West. Un. Tel. Co.,* 148 U. S. 92, 97, 98, affirming 39 Fed. Rep. 59; 149 U. S. 465, 467; and see also on retrial, 63 Fed. Rep. 68.

The construction and maintenance of telegraph lines within the State of Pennsylvania having been authorized by the constitution of the State, and the legislature having authorized the construction of the lines, this authority is all that is needed, and as the Commonwealth owns the franchise of every highway, no municipal corporation has any power over the highways not delegated by the State. Citing *O'Connor* v. *Pittsburgh,* 18 Pa. St. 187–189; *Stormfelt* v. *Manor Turnpike Co.,* 13 Pa. St. 555–559; *Millvale Boro.* v. *Evergreen Ry. Co.,* 131 Pa. St. 1–23, 24; *Commonwealth* v. *R. R. Co.,* 27 Pa. St. 339–354; *Case of Phila. & Trenton R. R. Co.,* 36 Pa. St. 318; *Mercer* v. *Pittsburgh &c. Ry. Co.,* 36 Pa. St. 99; *City of Pittsburgh's Appeal,* 120 Pa. St. 1; *Homestead Street Ry. Co.* v. *Pittsburgh &c. Ry. Co.,* 166 Pa. St. 162; 2 Dillon on Mun. Corp. 3d ed. 657; *Millerstown* v. *Bell,* 123 Pa. St. 151, construing act of 1851.

The company should not be obliged to provide an insurance or guarantee fund to insure the municipality from damages for which it might be held liable by reason of the construction and maintenance of the poles and wires, as seemed to be the controlling thought in *Chester City* v. *West. Un. Tel. Co.,* 154 Pa. St. 464; *Phila.* v. *Am. Un. Tel. Co.,* 167 Pa. St. 406; the municipality cannot be held for such liability, as it cannot exclude

the company from occupying the highways under the law of the State. *St. Louis* v. *West. Un. Tel. Co.*, 148 U. S. 92–98; *Phila.* v. *West. Un. Tel. Co.*, 40 Fed. Rep. 616.

The Western Union Telegraph Company is engaged in interstate commerce, as was decided by this court in *Telegraph Co.* v. *Telegraph Co.*, 96 U. S. 1; and interstate commerce cannot be taxed by the State. *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Asher* v. *Texas*, 128 U. S. 129; *Stoutenburgh* v. *Hennick*, 129 U. S. 141; *McCall* v. *California*, 136 U. S. 104; *Brennan* v. *Titusville*, 153 U. S. 289. It was held in *Leloup* v. *Port of Mobile*, 127 U. S. 640, that the Western Union Telegraph Company could not be made to pay a license tax of $245 to the city, citing, also, *Crutcher* v. *Kentucky*, 141 U. S. 47; *Hannibal & St. J. R. R. Co.* v. *Husen*, 95 U. S. 465; *Minnesota* v. *Barber*, 136 U. S. 313; *Brimmer* v. *Rebman*, 138 U. S. 78; *Leslie* v. *Hardin*, 135 U. S. 100; *Lyng* v. *Michigan*, 135 U. S. 161.

It is not legitimate under the guise of an exercise of the police power to place a burden upon, and a regulation of, the interstate commerce carried on by the telegraph company. *Walling* v. *Michigan*, 116 U. S. 446–460; *Railway Co.* v. *Illinois*, 118 U. S. 557; *Leslie* v. *Hardin*, 135 U. S. 100–108; *Crutcher* v. *Kentucky*, 144 U. S. 47–59; *Brennan* v. *Titusville*, 153 U. S. 289–302; *Brown* v. *Maryland*, 12 Wheaton, 419–444; *Welton* v. *Missouri*, 91 U. S. 275–278–281; *Leloup* v. *Port of Mobile*, 127 U. S. 640, 645, 658; *Postal Tel. Co.* v. *Charleston*, 153 U. S. 692.

*Mr. William C. Ryan*, for defendant in error, contended that the possession of power by the municipality to inspect and regulate the erection and maintenance of poles and wires in its street implies a duty to do so, which duty it is presumed it will discharge, and it is therefore empowered to impose license fees to indemnify it against, or reimburse it for, any expense which may be incident to such supervision and regulation. The fees have not been fixed with reference to the value of the company's property located within the municipal limits of the borough, or the amount of its gross receipts. Citing as to this and as to meas-

ure of reasonableness of charge, *Taylor Borough* v. *Postal Tel. Co.*, 202 Pa. St. 583, 584; *Chester City* v. *West. Un. Tel. Co.*, 154 Pa. St. 466.

Although the business of company is interstate commerce and the poles and wires are instruments used in the conduct of the business, such property is not exempt from the police regulations of the municipality, which, while it cannot exclude the poles and wires from the streets, is required by the public welfare to see that they do not become a menace to the safety of those using the streets as highways. This case is distinguished from *Brown* v. *Maryland*, 12 Wheaton, 419; *Almy* v. *California*, 24 How. 169, 173; *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Brennan* v. *Titusville*, 153 U. S. 589.

There is a distinction between regulating interstate commerce and taxing property engaged in such commerce. *State Freight Tax Cases*, 15 Wall. 232; *Pensacola Tel. Co.* v. *West. Un. Tel. Co.*, 96 U. S. 1; *Mobile* v. *Kimball*, 102 U. S. 691; *West. Un. Tel. Co.* v. *Texas*, 105 U. S. 460; *Moran* v. *New Orleans*, 112 U. S. 69; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Brown* v. *Houston*, 114 U. S. 622; *Walling* v. *Michigan*, 116 U. S. 446; *Picard* v. *Pullman Southern Car Co.*, 117 U. S. 34; *Wabash Ry. Co.* v. *Illinois*, 118 U. S. 557; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Phila. & S. S. Co.* v. *Penna.*, 122 U. S. 326; *West. Un. Tel. Co.* v. *Pendleton*, 112 U. S. 347; *Ratterman* v. *West. Un. Tel. Co.*, 127 U. S. 411; *West. Un. Tel. Co.* v. *Massachusetts*, 125 U. S. 530.

In conclusion the following propositions were submitted:

1. That the provisions of the ordinance do not constitute an attempt on the part of the municipality to regulate or impose a burden upon interstate commmerce.

2. That the adoption and enforcement of said ordinance is a lawful exercise of the police power with which said borough is vested under the constitution and laws of Pennsylvania.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

It is conceded that the borough had the right in the exercise

of its police power to impose a reasonable license fee upon telegraph poles and wires within its limits, and that an ordinance imposing such fee is to be taken as *prima facie* reasonable. But it is insisted that on the evidence in this case the presumption of reasonableness is rebutted, and that the ordinance as administered is void because a regulation of interstate commerce. While in the exercise of its control over its streets, it is admitted that the borough may supervise the location of the poles erected to sustain the wires of the plaintiff in error, may require them to be marked, may make such inspection of them as may be necessary to protect the public welfare, and may impose a reasonable license fee for the cost of such regulation and supervision, and of the issuing of such permits as may be required for the enforcement thereof, yet it is contended that if the license fee turned out to be in excess of the amount necessary to reimburse the municipality the ordinance became unreasonable and invalid. The Superior Court in its opinion referred to many decisions of the Supreme Court of Pennsylvania as definitively establishing, among other propositions, "that in an action to recover the license fee for a particular year, the same being payable at the beginning of the year, the fact that the borough or city did not expend money for inspection, supervision, or police surveillance of the poles and wires in that year is not a defence," and "that the courts will not declare such ordinance void because of the alleged unreasonableness of the fee charged, unless the unreasonableness be so clearly apparent as to demonstrate an abuse of discretion on the part of the municipal authorities." And it was said that in many of the cases cited the license fee was the same as that imposed by this ordinance. 16 Superior Ct. Rep. 309. The Supreme Court affirmed the judgment in a similar case on the opinion given below in this. 202 Pa. St. 532.

In *Chester City* v. *Telegraph Company*, 154 Pa. St. 464, in which it was averred in the affidavit of defence that the rates charged were at least five times the amount of the expense involved in the supervision exercised by the municipality, the Supreme Court said : "For the purposes of this case we must treat this averment as true, as far as it goes. The difficulty is it does not go far enough. It refers only to the usual, ordinary

or necessary expense of municipal officers, of issuing licenses and other expenses thereby imposed upon the municipality. It makes no reference to the liability imposed upon the city by the erection of telegraph poles. It is the duty of the city to see that the poles are safe, and properly maintained, and should a citizen be injured in person or property by reason of a neglect of such duty, an action might lie against the city for the consequences of such neglect. It is a mistake therefore to measure the reasonableness of the charge by the amount actually expended by the city for a particular year, to the particular purposes specified in the affidavit."

In *Taylor Borough* v. *Telegraph Company*, 202 Pa. St. 583, the Supreme Court said: "Clearly the reasonableness of the fee is not to be measured by the value of the poles and wires or of the land occupied, nor by the profits of the business. The elements which enter into the charge are the necessary or probable expense incident to the issuing of the license and the probable expense of such inspection, regulation and police surveillance as municipal authorities may lawfully give to the erection and maintenance of the poles and wires. . . . Whether or not the fee is so obviously excessive as to lead irresistibly to the conclusion that it is exacted as a return for the use of the streets, or is imposed for revenue purposes, is a question for the courts and is to be determined upon a view of the facts, not upon evidence consisting of the opinions of witnesses as to the proper supervision that the municipal authorities might properly exercise and the expense of the same." And see *City of Philadelphia* v. *Western Union Telegraph Company*, 89 Fed. Rep. 454.

Concurring in these views in general, we think it would be going much too far for us to decide that the test set up by the plaintiff in error must be necessarily applied, and the ordinance held void because of failure to meet it. As the Supreme Court pointed out, the elements entering into the charge are various, and the Court of Common Pleas, the Superior Court, and the Supreme Court of Pennsylvania have held it to be reasonable, and we cannot say that their conclusion is so manifestly wrong as to justify our interposition.

This license fee was not a tax on the property of the company, or on its transmission of messages, or on its receipts from such transmission, or on its occupation or business, but was a charge in the enforcement of local governmental supervision, and as such not in itself obnoxious to the clause of the Constitution relied on. *St. Louis* v. *Telegraph Company*, 148 U. S. 92; 149 U. S. 465.

*Judgment affirmed.*

Mr. Justice White, Mr. Justice Peckham and Mr. Justice McKenna dissented.