## LIBERTY HIGHWAY CO. et al. v. MICHIGAN PUBLIC UTILITIES COMMISSION et al.

(District Court, E. D. Michigan, S. D.   December 11, 1923.)

No. 593.

1. **Statutes ⟳113(3)—Michigan Motor Carrier Act held not in violation of state Constitution.**

Pub. Acts Mich. 1923, No. 209, for licensing and regulating common carriers by motor vehicles on the highways of the state, has but one general object, to which all its provisions applying to such common carriers are germane, and which is sufficiently expressed in its title, within the requirement of Const. Mich. art. 5, § 21, providing that "no law shall embrace more than one object, which shall be expressed in its title."

2. **Statutes ⟳109—That title is broader than act not fatal defect.**

Under Const. Mich. art. 5, § 21, that the title of an act is broader than the act itself is not a fatal defect, unless the title fails to give notice of what the act contains.

3. **Statutes ⟳64(1)—Invalidity of independent provisions does not affect other provisions.**

Invalidity of independent and separable provisions of an act does not affect the remainder of the act.

4. **Commerce ⟳63—State cannot impose license fee on interstate commerce.**

A state is without power, even under the guise of an exercise of its police power, to require a license for the privilege of engaging in interstate commerce, or to otherwise interfere with it as such.

5. **Commerce ⟳63—State may regulate use, though incidentally affecting interstate commerce.**

The commerce clause of the Constitution does not deprive the states of the right to reasonably regulate, under their police power, the use of their public highways, and to that end to require a license for the privilege of such use, and impose a reasonable charge therefor, even though thereby interstate commerce is incidentally affected, provided such regulation, license and charge bear a reasonable relation to the safe and proper maintenance and protection of such highways, do not obstruct or burden interstate commerce, and are not in conflict with federal legislation on the same subject enacted within constitutional limitations.

6. **Commerce ⟳63—Provisions of Michigan statute for licensing common carriers by motor vehicle on highways held constitutional.**

Pub. Acts Mich. 1923, No. 209, for licensing and regulating common carriers by motor vehicle on the public highways, as to such provisions as are confined in their application to the regulation and such carriers in connection with the public highways, *held* not unconstitutional as applied to interstate carriers.

7. **Commerce ⟳63—License tax for use may include reasonable charge for upkeep.**

The amount of the privilege tax imposed by a state for use of its highways need not necessarily be limited, even to those engaged in interstate commerce to the actual cost of regulation, but may include reasonable compensation for use of the highways and fair provision for anticipated repairs and improvements.

8. **Commerce ⟳63—Provisions of state statute regulating common carriers by motor held invalid as imposing burden in interstate commerce.**

Provisions of a state statute for licensing and regulating common carriers by motor vehicle on its highways, which have no reasonable relation to the use of such highways, as a provision requiring the carriers to provide insurance or indemnity bonds for the protection of persons or property carried, as applied to interstate carriers, are invalid as imposing a direct burden on interstate commerce.

⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. **Highways ⊚⟹165—State may make reasonable regulations for use of federal aid highways; "tolls."**

Federal Highway Act, § 9 (Comp. St. Ann. Supp. 1923, § 7477¼h), providing that "all highways constructed or reconstructed under the provisions of this act shall be free from tolls of all kinds," does not deprive a state of the right, in the exercise of its police power, to enact reasonable regulations for the use of such highways, including the imposition of license fees.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Toll.]

10. **Constitutional law ⊚⟹208(3)—Highways ⊚⟹165—State may regulate use of highways by common carriers.**

It is within the police powers of a state to reasonably regulate the manner and extent of the use of its public highways by common carriers, and such a regulating statute is not class legislation, because it makes a distinction between their use by a common carrier and by the general public.

11. **Statutes ⊚⟹47—Provision held invalid, as too vague and uncertain to furnish standard of violation.**

A provision of a statute that all laws of the state regulating common carriers shall apply also to common carriers by motor vehicle on the public highways of the state *held* invalid, as too vague and uncertain to furnish a definite standard of guilt for its violation.

12. **Constitutional law ⊚⟹62, 80(2)—Statute held not invalid, as conferring judicial and legislative powers on state commission.**

A statute providing for its administration by the state Public Utilities Commission *held* not invalid, as conferring judicial and legislative powers on the commission, where such powers are generally and properly exercised by such bodies.

13. **Statutes ⊚⟹58—Provision for time of taking effect held immaterial.**

That the Legislature may have abused its discretion in making a statute immediately effective is not ground for attacking its validity after the time when it would have become effective without such provision.

In Equity. Suit by the Liberty Highway Company, an Ohio corporation, and Edward Kabel, a citizen of Ohio, against the Michigan Public Utilities Commission, the five members of the Commission as individuals, Andrew B. Dougherty, Attorney General of the state of Michigan, the prosecuting attorneys of Wayne, Ingham, Oakland, and Monroe Counties, Mich., and the commander and one of the members of the Michigan state police, to enjoin the enforcement by the defendants of an act of the Michigan state Legislature. On motion for preliminary injunction. Denied.

The plaintiff Liberty Highway Company is an Ohio corporation engaged in transporting freight by means of motor trucks between fixed points in Ohio and fixed points in Michigan, operating upon the highways of Michigan over fixed routes. It claims to be engaged solely in interstate business and to do no intrastate business; to have developed a large and profitable business, with an investment in excess of $70,000; that it employs many trucks and trailers, and that in its business it subcontracts with others for the employment of motor trucks, some of which are owned in Ohio by citizens thereof, and that the coplaintiff, Charles Kabel, is one of its subcontractors. The Michigan Public Utilities Commission, defendant, is a commission created by statute of Michigan as a successor to the Michigan Railroad Commission, and is empowered by law to regulate and control certain public utilities operated within the state. The other defendants are county and state officers whose duty it is to enforce the laws of Michigan, and by virtue of their offices threaten to enforce as to plaintiffs the provisions of Act 209 of the Public Acts of Michi-

---

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gan of 1923, approved May 23, 1923, and entitled as follows: "An act to regulate and define common carriers of persons and property by motor vehicle on public highways of this state, prescribing the payment and fixing the amount of privilege taxes for such carriers, the disposition of such taxes, and prescribing penalties for violation of this act." The object of this action is to enjoin the enforcement of this act as against the plaintiffs on the ground that it contravenes provisions of the federal and state Constitutions. The act provides that no person, firm, or corporation shall engage or continue in the business of transporting persons or property by motor vehicle for hire over the public highways of the state over fixed routes, or between fixed termini, unless they shall have obtained a permit from the Michigan Public Utilities Commission, which shall be issued in accordance with public convenience and necessity. It provides that the commission shall prescribe appropriate rules and regulations; that it may withhold such permit in whole or in part; that all persons or corporations engaged in the business described in the act shall be common carriers; that all laws of the state regulating transportation by other common carriers, including regulation of rates, shall apply to common carriers by motor vehicle; that the permit to be granted shall specify routes; that whether motor vehicles operate over fixed routes, or between fixed termini, shall be a question of fact upon which the commission's finding shall be final; that permits may be granted, suspended, or revoked for violation of the act, or the rules or regulations of the commission; that all common carriers under the act shall carry insurance for the protection of persons and property carried by them, and shall furnish an indemnity bond conditioned upon payment of just claims and liabilities; that every carrier shall pay to the commission, for the use of the state, as a privilege fee, $1 for each 100 pounds of weight of each motor vehicle, which fees shall be in addition to motor vehicle tax prescribed by general law; that permits shall be good for one year, and shall be renewed upon like terms from year to year; that all fees shall be paid into the state treasury, and are appropriated to the general highway fund for highway purposes; that violations of the act shall be punishable by fine or imprisonment or both; that the commission may use any and all available legal and equitable remedies of a civil nature to enforce the provisions of the act, or its rules and regulations made in pursuance thereof; that each section of the act shall be independently operative, and that the unconstitutionality of any section shall not invalidate the remainder of the act, and the act is given immediate effect. Act 209 contains 11 sections, of which sections 3 and 7 are set forth in full in the margin.[1] The defendants answer jointly and move for a dismissal of the bill of complaint.

George E. Brand, of Detroit, Mich., for plaintiffs.

Andrew B. Dougherty, Atty. Gen., O. L. Smith, Asst. Atty. Gen., and W. L. Carpenter and H. E. Spaulding, both of Detroit, Mich., amici curiæ, for defendants.

[1] Sec. 3. Any and all persons, firms or corporations, now engaged, or which shall hereafter engage, in the transportation of persons or property for hire by motor vehicle, upon or over the public highways of this state, or any of them, as above described, shall be common carriers, and, so far as applicable all laws of this state now in force or hereafter enacted, regulating the transportation of persons or property by other common carriers, including regulation of rates, shall apply with equal force and effect to such common carriers of persons and property by motor vehicle upon or over the public highways of this state as above provided.

Sec. 7. Any and all common carriers under this act shall carry insurance for the protection of the persons and property carried by them in such amount as shall be ordered by said commission, and in insurers approved by the commissioner of insurance of this state, or shall furnish an indemnity bond running to the people of the state of Michigan, conditioned upon the payment of all just claims and liabilities resulting from injury to persons or property carried by such carrier, and in a company authorized to do business in this state, in an amount to be fixed and approved by said commission.

Before DONAHUE, Circuit Judge, and TUTTLE and SIMONS, District Judges, under section 266 of the Judicial Code.

PER CURIAM. Plaintiffs seek to have enforcement of Act 209 of the Public Acts of Michigan of 1923 enjoined upon the ground of its alleged unconstitutionality, both under the Michigan and the federal Constitutions. They contend: (1) That it violates section 21 of article 5 of the Constitution of Michigan, in that its real object is not expressed in the title, and in that it contains a plurality of objects. (2) That it violates the interstate commerce clause of the federal Constitution, in that it unlawfully regulates and burdens interstate commerce. (3) That the Federal Highway Act (Comp. St. Ann. Supp. 1923, § 7477¼ et seq.) precludes the enactment of a tax for the use of roads built partly with federal aid. (4) That the act is discriminatory class legislation. (5) That it is void for uncertainty and indefiniteness.

[1] 1. Act 209 of the Public Acts of Michigan of 1923 has as its general object the establishment of a scheme for licensing and for the accompanying regulation of common carriers by motor vehicle on and in connection with the public highways of the state. The license fee in question is prescribed for the privilege of using such highways, and is a part of such regulatory scheme. All of the provisions of the act applying to common carriers are germane, auxiliary, or incidental to the general purpose. The statute has only one object, which is sufficiently indicated in its title, and it is therefore not defective in this respect, within section 21 of article 5 of the Michigan Constitution, which provides:

"No law shall embrace more than one object which shall be expressed in its title." Jasnowski v. Board of Assessors, 191 Mich. 287, 157 N. W. 891; Loomis v. Rogers, 197 Mich. 265, 163 N. W. 1018; Attorney General v. Hillyer, 221 Mich. 537, 191 N. W. 827.

[2] The principal objection urged to the title of the act is that it purports to regulate and define common carriers generally, whereas the provisions of the act are restricted to a class of common carriers. This is not a fatal defect in the title. Where the title of the act is broader than the act itself, it has not usually been regarded as a fatal defect, unless the title failed to give notice of what the act contained. Jasnowski v. Judge of Recorder's Court, 192 Mich. 139, 158 N. W. 229, and cases therein cited.

[3] As, however, the title to this act has reference only to common carriers, any provisions thereof so broad in their terms as to be applicable also to private carriers are foreign to such title and fall under the condemnation of the Michigan constitutional requirements herein referred to. Such provisions are the provisions of section 3. They are, however, independent of and separable from those that apply to common carriers, and their invalidity does not affect the remainder of the act. Klatt v. Probate Judge, 159 Mich. 203, 123 N. W. 542; Chambers v. Grand Ledge, 162 Mich. 344, 127 N. W. 353; Attorney General v. Hillyer, supra; City of Lansing v. Board of State Auditors, 111 Mich. 327, 69 N. W. 723.

[4] 2. It is not within the power of the state, even under the guise of an exercise of its police power, to require a license for the privilege of engaging in or otherwise interfering with interstate commerce as such, for that would be to regulate such commerce, the power to do which has been surrendered by the state to Congress. Wabash, St. Louis & Pacific Railway Co. v. Illinois, 118 U. S. 557, 7 Sup. Ct. 4, 30 L. Ed. 244; Robbins v. Taxing District, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; Bowman v. Chicago & Northwestern Railway Co., 125 U. S. 465, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700; Harmon v. Chicago, 147 U. S. 396, 13 Sup. Ct. 306, 37 L. Ed. 216; Brennan v. Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719; Barrett v. New York, 232 U. S. 14, 34 Sup. Ct. 203, 58 L. Ed. 483; Sault Ste. Marie v. International Transit Co., 234 U. S. 333, 34 Sup. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574; Askren v. Continental Oil Co., 252 U. S. 444, 40 Sup. Ct. 355, 64 L. Ed. 654; Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 Sup. Ct. 244, 66 L. Ed. 458.

[5] The commerce clause of the federal Constitution does not, however, deprive the states of the right to reasonably regulate under their police power the use of their public highways, and to that end to require a license and impose a reasonable charge therefor, for the privilege of such use, even if thereby interstate commerce is incidentally affected, provided that such regulation, license, and charge bear a reasonable relation to the safe and proper maintenance and protection of such highways, do not obstruct or burden interstate commerce, and are not in conflict with federal legislation on the same subject enacted within constitutional limitations. Escanaba & Lake Michigan Transportation Co. v. Chicago, 107 U. S. 678, 2 Sup. Ct. 185, 27 L. Ed. 442; St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380; Minnesota Rate Cases (Simpson v. Shepard) 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Hendrick v. Maryland, 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. 222; Mackay Telegraph & Cable Co. v. Little Rock, 250 U. S. 94, 39 Sup. Ct. 428, 63 L. Ed. 863; Interstate Motor Transit Co. v. Kuykendall (D. C.) 284 Fed. 882; Camas Stage Co. v. Kozer, 104 Or. 600, 209 Pac. 95, 25 A. L. R. 27; Northern Pacific Railway Co. v. Schoenfeldt (Wash.) 213 Pac. 26.

[6] The case of Interstate Motor Transit Co. v. Kuykendall, supra, involved a statute similar in nearly all essential respects to Act 209. The plaintiff was engaged in interstate commerce between Seattle and San Francisco, and did no intrastate commerce business. This case was heard by a special court convened under section 266 of the Judicial Code (Comp. St. § 1243), and the statute was held valid as against the same constitutional objections as are here urged. The Kuykendall Case follows and is largely ruled by the decisions of the Supreme Court in Hendrick v. Maryland, supra, and Kane v. New Jersey, supra. In the Hendrick Case Mr. Justice McReynolds said:

"The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads, the construction and maintenance of which are exceedingly expensive. * * * In the absence

of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others. * * * This is but an exercise of the police power, uniformly recognized as belonging to the states, and essential to the health, safety and comfort of their citizens, and it does not constitute a direct and material burden on interstate commerce. * * * The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair, and practical standard, they constitute no burden on interstate commerce."

Plaintiffs have not successfully distinguished the Kane and Hendrick Cases from the instant case, in so far as they relate to interstate commerce. The vehicles sought to be regulated by the Michigan statute are commercial vehicles carrying both passengers and freight. It may be well considered that their operations involve a greater menace to public safety and are more destructive of the highways than are private automobiles operated for pleasure, and that they call for a greater degree of regulation and a higher compensation for the use of special facilities afforded.

[7] The amount of the privilege tax for the use of the highways need not necessarily be limited, even to those engaged in interstate commerce, to the actual cost of such regulation, but may also, as apparently is the case here, include reasonable compensation for the use of the highways and fair provision for anticipated repairs and improvements thereon. Western Union Telegraph Co. v. New Hope, 187 U. S. 419, 23 Sup. Ct. 204, 47 L. Ed. 240; Atlantic & Pacific Telegraph Co. v. Philadelphia, 190 U. S. 160, 23 Sup. Ct. 817, 47 L. Ed. 995; Kane v. New Jersey, supra.

[8] It follows that such provisions of the act as are confined in their application to regulation of common carriers in connection with the public highways are not a direct burden upon interstate commerce, even though they may incidentally affect interstate commerce, but any provisions which are not so confined constitute an attempt by the state to regulate, and therefore to unduly burden, interstate commerce, and they are for that reason in contravention of the federal Constitution, and void. Such provisions are those contained in sections 3 and 7 of the act. Section 3 has already been referred to. The provisions of section 7, providing for insurance and for indemnity bonds for the protection of persons and property carried, are a direct burden upon interstate commerce, and are for that reason void. The provisions of both sections are separable from and independent of the remainder of the act, and so do not affect its validity. Interstate Motor Transit Co. v. Kuykendall (D. C.) 284 Fed. 882.

[9] 3. Section 9 of the Federal Highway Act of November 9, 1921 (42 Stat. 212 [Comp. St. Ann. Supp. 1923, § 7477¼h]), provides:

"All highways constructed or reconstructed under the provisions of this act shall be free from tolls of all kinds."

This is not in our judgment intended to refer to license fees such as are here involved (it not being even claimed that such act has reference to the analogous fees imposed under general motor vehicle license laws,

or to laws licensing drivers of such vehicles). State v. Vigneaux, 130 La. 424, 58 South. 135. The most that can be said of it in this connection is that such a provision is merely a condition attached, as between the federal government and the state, to the contribution of aid provided by federal legislation, and cannot deprive the state of its power and duty as trustee of the public highways for the benefit of the people of the state, to enact reasonable regulations in the exercise of its police power over such highways.

[10] 4. The state may within its police power reasonably regulate the manner and extent of the use of its public highways by common carriers. Legislation of essentially the same character as that of Act 209 has been widely enacted and sustained by the courts against constitutional objections such as are here urged. Nolen v. Riechman (D. C.) 225 Fed. 812; Lutz v. New Orleans (D. C.) 235 Fed. 978, affirmed in Lutze v. New Orleans (C. C. A. 5) 237 Fed. 1018, 150 C. C. A. 654; Schoenfeld v. Seattle (D. C.) 265 Fed. 726; Hadfield v. Lundin, 98 Wash. 657, 168 Pac. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942; West v. Asbury Park, 89 N. J. Law, 402, 99 Atl. 190; Jitney Bus Association v. Wilkes-Barre, 256 Pa. 462, 100 Atl. 954; West Suburban Transportation Co. v. Chicago & West Towns Railway Co. (Ill.) 140 N. E. 56; Western Association v. Railroad Commission, 173 Cal. 802, 162 Pac. 391; New Orleans v. Le Blanc, 139 La. 113, 71 South. 248; Huston v. Des Moines, 176 Iowa, 455, 156 N. W. 883; Cummins v. Jones, 79 Or. 276, 155 Pac. 171; Desser v. Wichita, 96 Kan. 820, 153 Pac. 1194, L. R. A. 1916D, 246; Ex parte Sullivan, 77 Tex. Cr. R. 72, 178 S. W. 537; Memphis v. Tennessee, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917G, 1056; Ex parte Dickey, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840.

The statute is not class legislation because it applies only to common carriers operating over fixed routes. It is well known that commercial motor vehicle transportation, and highway maintenance expense resulting therefrom, is rapidly increasing; that traffic on main highways is greatly congested. It is not an unreasonable classification under the police power to make a distinction between those common carriers whose use of the highways is more regular, and hence more frequent, and whose operation on the highways is attended with greater danger to life and property, and greater damage to the highways, and those carriers whose use of the highways is only occasional and spasmodic. Such a distinction does not constitute an arbitrary discrimination, it being settled that every state of facts sufficient to sustain a classification which can be reasonably conceived of as having existed when the statute was enacted will be assumed by the court. Crescent Cotton Oil Co. v. Mississippi, 257 U. S. 129, 42 Sup. Ct. 42, 66 L. Ed. 166; Nolen v. Riechman, supra.

The latter case was decided by a special court convened under section 266 of the Judicial Code, in the District Court for the Western District of Tennessee, Western Division, opinion rendered by Warrington, Circuit Judge, and McCall and Sanford, District Judges. There was involved a statute seeking to regulate as common carriers "any public conveyance propelled by steam, * * * gasoline, * * *

electricity or other power, for purposes of transportation similar to that ordinarily afforded by street railways (but not operated upon fixed tracks), by indiscriminately accepting and discharging passengers along the way and course of operation." The purpose of the statute was to regulate vehicles commonly known as "jitneys," and it was contended that the act set up an unreasonable classification and was violative of the Fourteenth Amendment to the Constitution of the United States. The court found that there is a substantial distinction between a street railway and a jitney, and between a jitney and a taxicab, saying:

"While the services they all render are those of common carrier, yet the services are so different in detail that it would be wholly impracticable to write a statute applicable to them all and serve at the same time the convenience and safety of the public."

The distinction between a jitney and a taxicab is precisely the distinction which the plaintiff contends results in discriminatory classification in the instant case. The jitney operates upon a schedule over fixed routes and between fixed termini, while the operations of the taxicab are more flexible and occasional. They are both common carriers, but the incidents of their operation differ, and call for different kinds of regulation.

[11] 5. Section 3 of the act, providing, among other things, that all laws of the state regulating common carriers shall apply also to common carriers by motor vehicle on the public highways of the state, would seem to be invalid for the additional reason that it is too vague and uncertain to furnish a sufficiently definite standard of guilt. Kinnane v. Detroit Creamery Co., 255 U. S. 102, 41 Sup. Ct. 304, 65 L. Ed. 531. Plaintiffs' attack upon Act 209 for uncertainty and indefiniteness is directed wholly to section 3, and we have already indicated the invalidity of this section under constitutional provisions elsewhere referred to.

[12] The additional contention raised by the bill of complaint, that the act confers judicial and legislative powers on an executive tribunal, is, in our opinion, without merit; the powers and duties with which the Public Utilities Commission is clothed by the statute being such as are uniformly held to be properly vested in an administrative board of this kind. Arver v. United States, 245 U. S. 366, 38 Sup. Ct. 159, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856; Mackin v. Detroit-Timkin Axle Co., 187 Mich. 819, 153 N. W. 49.

[13] Equally untenable is the claim that the act is void because given given immediate effect. Even if the Legislature clearly abused (as has not been shown) its broad discretion in this respect (People v. Urcavitch, 210 Mich. 431, 178 N. W. 224), the statute became effective at least at the expiration of the period prescribed by the Michigan Constitution for bills not entitled to immediate effect (Attorney General v. Lindsay, 178 Mich. 524, 145 N. W. 98; Simpson v. Paddock, 195 Mich. 581, 161 N. W. 898).

We conclude that Act 209, except sections 3 and 7 thereof, is a valid exercise of the police power of the state, and that the regulatory provisions thereof for the use of the state highways are operative inde-

pendent of sections 3 and 7. Until plaintiffs have offered to comply with those provisions of the act which are sustained, they may not invoke the equitable arm of the court as to those provisions of the act which are a direct burden upon interstate commerce.

The injunction prayed for in the bill of complaint is denied.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes