# Lower Merion Township *v.* Postal Telegraph Cable Company, Appellant.

*Townships—Townships of the first class—Powers of commissioners—Ordinances for the protection of highways—Telegraph and telephone poles—License tax—Province of court and jury—Act of April 28, 1899, P. L. 104.*

Under the Act of April 28, 1899, P. L. 104, commissioners of townships of the first class have no powers but what are expressly granted them, and such implied powers as are necessary for the proper performance of their duties under their expressly granted powers, and the accomplishment of the objects for which they were conferred.

Strictly speaking, the power to take all needful means for securing the safety of persons and property within the township, and to adopt by-laws and ordinances prescribing the manner in which the specially enumerated powers shall be carried out, and, generally, regulating the township affairs to which such powers appertain, is not an implied, but an express, power.

The safe-keeping of the highways within the limits of a township of the first class is under the act of April 28, 1899, a township affair, concerning which the township commissioners have power to legislate.

To render ordinances and by-laws reasonable they should tend in some

degree to the accomplishment of the objects for which the corporation was created, and its powers conferred.

Under the Act of April 28, 1899, P. L. 104, commissioners of townships of the first class have the power to impose by ordinance a reasonable license tax on telegraph and telephone companies for each telegraph or telephone pole in the township.

In an action by a township of the first class against a telegraph company to recover a license tax under an ordinance which imposed a tax of fifty cents per pole without any tax on wire, an affidavit of defense is sufficient to prevent judgment which avers that the license tax was not based upon the cost for inspection by the township, that it was more than twenty times the amount that might have been, or could possibly be incident to such inspection, and that it largely exceeded the entire cost to the defendant itself of maintaining its line.

Argued Oct. 6, 1903.   Appeal, No. 247, Oct. T., 1902, by defendant, from order of C. P. No. 1, Phila. Co., June T., 1902, No. 3114, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Lower Merion Township v. Postal Telegraph Cable Company.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Reversed.

Assumpsit to recover a license tax on telegraph poles.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that the suit was brought to recover the sum of $180, being a license tax on 360 poles under an ordinance which imposed a tax of fifty cents on each pole without any tax on wire.   The defendant filed an affidavit of defense, the material averments of which may be summarized as follows:

(*a*) That the defendant has paid to the commonwealth of Pennsylvania all taxes charged for the value of its poles and wires in the township of Lower Merion.

(*b*) That the purpose, intention and effect of the said ordinance is to provide revenue, by taxation, for the general expenses of the said township.

(*c*) That the said township is under no expense whatever of issuing the license required by the said ordinance.

(*d*) That the said township has not been at any time under any expense of any kind or nature in inspecting and regulating the poles of the defendant.

308 LOWER MERION TWP. *c.* TEL. CABLE CO., Appellant.

Statement of Facts—Opinion of the Court. [25 Pa. Superior Ct.

(*e*) That the said township has not been under any additional or incidental liability of any kind or nature whatsoever in looking after the safety of said poles, or under any additional or incidental liability for injury to persons or property by reason of the erection of said poles.

(*f*) That the license charge is not based upon the cost and expense for inspection, regulation and supervision of said poles.

(*g*) That the said charge is more than twenty times the amount that might have been or could possibly be incident to such inspection, supervision and regulation.

(*h*) That the amount of said charge largely exceeds the entire cost to the defendant itself of maintaining said line.

(*i*) That the said charge is prohibitive in that it exacts a charge so excessive as to destroy the defendant's business, because if similar amounts were charged throughout the state it would require the payment of more than $100,000 per annum by the defendant.

(*j*) That it has accepted the Act of July 24, 1866, R. S. of U. S. sec. 5263, and is engaged in interstate commerce.

The court made absolute the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Frank R. Shattuck*, for appellant.—The commissioners had no power to pass the ordinance: Enfield v. Jordan, 119 U. S. 680 (7 Sup. Ct. Rep. 358); Kittanning Academy v. Brown, 41 Pa. 269; Philadelphia v. Pennsylvania Hospital, 143 Pa. 367; Com. v. Vrooman, 164 Pa. 306; Union Twp. v. Gibboney, 94 Pa. 534; Penna. R. R. Co. v. Montgomery Co. Pass. Ry. Co., 167 Pa. 62; Bethlehem Borough v. Penna. Tel. Co., 4 Northampton Co. Rep. 389.

The case was for the jury: Western Union Tel. Co. v. New Hope Borough, 187 U. S. 419 (23 Sup. Ct. Rep. 204); Atlantic & Pacific Tel. Co. v. Philadelphia, 190 U. S. 160 (23 Sup. Ct. Rep. 817).

*Rowland Evans*, for appellee.

OPINION BY RICE, P. J., July 28, 1904:

1. Townships in Pennsylvania are divided by the Act of

April 28, 1899, P. L. 104, into two classes, the reason for this classification, as stated in the preamble, being that in those more populous townships of the commonwealth which are in large measure devoted to residential purposes, there is need of a form of government having greater powers than are possessed by the local governments of townships under existing laws. The 7th section of the act declares that " all the corporate power, authority and franchise " of townships of the first class shall be vested in and exercised by a board of township commissioners, and that " the said board shall have particularly the following powers." Here follows a specification of the powers of the board, which are, inter alia, to open, grade, construct and pave all public highways in the township and to keep the same in good order and repair; to construct footways along the same, and establish lights thereon; to accept the dedication of public highways 'and alleys ; under some circumstances, to cause the sidewalks to be paved and curbed at the expense of the abutting property; to establish a system of sewers and drainage, and require connection to be made with such sewers; to abate nuisances prejudicial to public health and safety, and collect the cost from the person responsible for the creation of the nuisance ; to make regulations respecting pigpens, slaughter houses, manure pits, cesspools and manufactories that are offensive, and prohibit or regulate the running at large of animals ; to establish a night watch and police force, and define the duties of the same ; to provide a lockup ; to arrest and confine vagrants " and generally to take all needful means for securing the safety of persons and property within the township ; " to purchase and maintain engines for the extinguishment of fires ; to regulate public entertainments ; to borrow money and issue evidences of indebtedness therefor; and, finally, " to adopt by-laws and ordinances prescribing the manner in which the above powers shall be carried out, and generally regulating the affairs of the township within .the powers hereby conferred." While, as shown by the foregoing recital, a township of the first class has many of the powers of a municipal corporation, and particularly of a borough incorporated under the act of 1851, yet it is to be borne in mind that " the act of classification does not attempt to create a hybrid borough, neither township nor borough ; it obviously in-

tends to preserve the old township organization with all its powers and duties except where it expressly enacts otherwise: " Dempster v. United Traction Co., 205 Pa. 70; Stowe Township Division, 23 Pa. Superior Ct. 285. The act itself is explicit upon that subject, declaring, that, except so far as modified by its provisions, all existing laws relating to townships shall continue in force until changed, modified or repealed, as to either class of townships, by legislation relating expressly thereto. It is obvious, therefore, that township commissioners have no powers but what are expressly granted them, and such implied powers as are necessary to the proper performance of their duties under their expressly granted powers, and the accomplishment of the objects for which they were conferred. But, strictly speaking, the power to take all needful means for securing the safety of persons and property within the township, and to adopt by-laws and ordinances prescribing the manner in which the specially enumerated powers shall be carried out, and, generally, regulating the township affairs to which such powers appertain, is not an implied, but an express, power; that is to say, the legislature did not leave this to mere implication. " But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid : " 1 Dillon's Municipal Corporations (4th ed.), sec. 328. Not only is it one of their expressly granted powers, but it is the expressly prescribed duty of the township commissioners, to cause all public highways within the township " to be effectually opened and constantly kept in repair at all seasons, and clear of all impediments to easy and convenient passing and traveling." In view of this and other statutory provisions to which we have referred, it cannot be doubted that the safe-keeping of the highways within its limits is, under the act of 1899, a township affair concerning which the township commissioners have power to legislate. Another principle to be adverted to, which is as applicable to townships of the first class as it is to municipal corporations proper, is that to render ordinances and by-laws reasonable, they should tend in some degree to the accomplishment of the objects for which the corporation was created and its powers conferred:

Cooley on Constitutional Limitations (6th ed.), p. 241. Upon the face of the ordinance under consideration the object which the commissioners had in view was, " the safe-keeping of the highways," and involved in that the necessary and proper supervision and inspection of the poles of telegraph and other companies erected upon the highways ; and for the full accomplishment of this object they ordained the exaction from such companies of a license fee or charge large enough to cover that expense and the expense incident to the issuing and making a record of the license.  The object was lawful, and the means chosen for effectuating it were not only adapted to the end to be attained, but were such as, prior to the passage of the act of 1899, the courts of this commonwealth, in numerous cases, had declared it was lawful and appropriate for the governing bodies of municipalities, having similar general powers and duties, to adopt.  The principle was thus stated by Judge HARE in the leading Pennsylvania case upon the subject, where, referring to the needs of the municipality—in that case a city—to exercise control and supervision over its streets, he says :  " And the need will be distinctly apparent if we reflect that she is responsible for the condition of the highways, and may be made answerable in damages for a want of care in guarding against the accidents that are only too likely to occur.  Should a sewer burst or a gas main explode and injure persons or property, or were one of the numerous telegraph poles to be blown down by a gale of wind with a like result, the city would be the first mark in a suit for compensation.  It is, therefore, her right and duty in the interests of humanity, and that her financial burdens may not be unduly increased, to keep a watchful eye on acts which, although done by persons claiming under a higher source, are yet so interwoven with matters in which she is directly concerned that it is difficult to draw the line and say where the responsibility ends : " Western Union Telegraph Co. v. City of Philadelphia, 22 W. N. C. 39.  It is a reasonable assumption that the legislature had this principle in mind when, in express terms, it conferred and imposed upon township commissioners the extensive powers and duties relative to the public highways, and the safe-guarding of persons and property within the township, to which we have referred, and concluded by empowering them to adopt by-laws

and ordinances prescribing the manner in which they shall be carried out, "and generally regulating the affairs of the township within the powers hereby conferred." The opinion was expressed in Millerstown Boro. v. Bell, 123 Pa. 151, that the general powers conferred under the borough law of 1851, "to make such laws, ordinances, by-laws and regulations, not inconsistent with the laws of this commonwealth, as they shall deem necessary for the good government of the borough," must be confined to the particular subjects referred to in the succeeding paragraphs of the same section; but it was conceded in the same case that an ordinance requiring a telegraph company to pay a fixed sum for each of its poles would be valid, "for this fairly comes within the police power over the streets, given by the same act." The police power of a township of the first class is not so broad, that is, it does not embrace so many subjects, as that of a city or borough, but it is broad enough to sustain the ordinance in question, provided the license fee or charge is reasonable in amount.

2. If the township commissioners had power to impose a license fee of any amount, the judgment for the plaintiff was justified by the precedents established by the prior decisions of this court and the Supreme Court, which are collected in New Hope Boro. v. Western Union Telegraph Co., 16 Pa. Superior Ct. 306; New Hope Boro. v. Postal Telegraph Cable Co., 16 Pa. Superior Ct. 310; s. c., 202 Pa. 532; Taylor Boro. v. Postal Telegraph Cable Co., 16 Pa. Superior Ct. 344; s. c., 202 Pa. 583. This was frankly conceded by the appellant's counsel upon the argument. But since the judgment was entered three decisions have been rendered by the Supreme Court of the United States, relative to similar charges imposed upon telegraph companies engaged in interstate commerce, which have an important bearing upon the question for decision here.

The first of these cases is Atlantic & Pacific Telegraph Company v. Philadelphia, 190 U. S. 160 (23 Sup. Ct. Rep. 817), which was brought up from the circuit court of the United States for the eastern district of Pennsylvania by writ of error. It was there held, reversing the circuit court, that, although, generally speaking, whether an ordinance be reasonable is a question for the court, yet in some cases the question of the reasonableness of the amount of a license charge upon corpora-

tions engaged in the business of interstate commerce may rightfully be submitted to the jury, and ought to have been submitted to them in that case, there being testimony that the actual cost of maintenance, repairs and supervision by the telegraph company was less than one half the sum thus charged by the city for supervision alone, and that all charges in respect to underground wires had been removed as an inducement to the removal of overhead wires. Speaking of the latter feature of the testimony Mr. Justice BREWER said : "It," the jury, "might have come to the conclusion that the charge was not made simply to meet the expenses of supervision, but rather to make a charge so burdensome as to compel the company to remove its wires from poles and put them in conduits."

The second case is Postal Telegraph Cable Co. v. New Hope Boro., decided January 4, 1904, in which the judgment of the Supreme Court of the state (202 Pa. 532) affirming the judgment of this court (16 Pa. Superior Ct. 310) which affirmed the judgment of the common pleas, was reversed. This action was brought on the same day, upon the same ordinance, and for the recovery of license charges for the same period of time as the action of the same borough against the Western Union Telegraph Company, in which a judgment upon verdict in favor of the borough was affirmed by this court, and by the Supreme Court of the United States : New Hope Boro. v. Western Union Telegraph Co., 16 Pa. Superior Ct. 306 ; 187 U. S. 419 (23 Sup. Ct. Rep. 204). There was a jury trial, and the evidence was practically the same in both cases. But in the Western Union case the verdict and judgment were for the full amount of the charge ($1.00 per pole and $2.50 per mile of wire), while in the Postal Telegraph case the verdict and judgment were for a less sum. Had it not been for this distinguishing feature of the latter case, it is inferable from the record that the decision of the United States Supreme Court would have been the same as that rendered in the former case, and there is nothing in Mr. Justice PECKHAM's opinion to show the contrary. The decision turned upon a question which does not arise in this case.

We come then to the third case, Postal Telegraph Cable Co. v. Borough of Taylor, decided in January, 1904, in which the judgment of the Supreme Court of the state, affirming the judg-

ment of this court, which had affirmed the judgment of the common pleas, for want of a sufficient affidavit of defense, was reversed. The court said: " Upon the averments in the affidavit of defense, which in this proceeding must be taken to be true, we can come to no other conclusion than that the ordinance was void because of the unreasonable amount of the license fee provided for therein." The averments to which the court specifically called attention as sustaining this conclusion, were: (1) that the borough was, where the poles were planted and the wires stretched, sparsely settled, and the danger to be apprehended from neglect in regard to the poles and wires was reduced to the minimum; (2) that the borough had in fact done nothing in the way of inspection or supervision during the time covered by the license in question; (3) that it had expended nothing and had incurred no liability for expenses arising from inspection and supervision on its behalf; (4) that the fee itself was twenty times the amount of expense that might have been reasonably and fairly incurred to make the most careful, thorough and efficient inspection and supervision that might have been made of such poles and wires, and for all reasonable measures and precautions that possibly could be required to be taken by the borough for the safety of its citizens and the public. " This," said Mr. Justice PECKHAM, " is not a mere expression of opinion. It is the averment of a fact. The company knows the amount it costs for the inspection, which it avers is made by its own servants, and which it avers is a most careful and efficient inspection, one intended to place and maintain the poles and wires in a perfectly safe and satisfactory condition. Knowing that cost, and comparing it with the amount demanded under the ordinance, it is enabled to state as a fact, and not as a mere opinion, that the amount of the license fee exacted under the ordinance is, as stated, twenty times more than it ought to be to secure a reasonable, efficient, and most careful inspection, as set forth in the affidavit mentioned." Further on in the opinion he says: " Under such facts it would seem to be plain that the ordinance was adopted as a means for raising revenue, and not to repay expenses for inspection. Judging the intention of the borough by its action, it did not intend to expend anything for an inspection of the poles and wires, and did intend to raise revenue under the or-

dinance." As all of the averments above referred to by the court as material and relevant are substantially reproduced in the affidavit filed in the present case, it is apparent that the judgment must be reversed and the defendant given an opportunity to substantiate them by proof.

Judgment reversed and procedendo awarded.