## Norwood Borough v. Western Union Telegraph Company, Appellant.

*Telegraph companies—License tax—Boroughs—Turnpike.*

If a corporation, although engaged in the business of interstate commerce, so carries on its business as to justify at the hands of any municipality a police supervision of the property and instrumentalities used therein, the municipality is not bound to furnish such supervision for nothing, and may, in addition to ordinary property taxation, subject the corporation to a charge for the expense of the supervision.

The liability of a borough to pay for injuries that might arise from the bad condition of telegraph poles and wires arising from the neglect of the telegraph company to inspect and supervise the same, is not a liability which the municipality is entitled to recover from the company in advance of its happening, but it is simply one of the reasons for an inspection by the borough, which shall be most carefully and continuously performed in order that injuries may not arise from the neglect of such supervision.

A borough may impose a license tax for the inspection of telegraph poles and wires, although such poles and wires are on a road owned by a turnpike company.

A telegraph company can acquire no right from a turnpike company, whose road is a borough street, to maintain its wires and poles in such negligent manner as to endanger the lives and limbs of those who traverse the same or to interfere, unnecessarily, with the extinguishment of fires, or, unnecessarily, to impede travel.

In an action against a telegraph company to recover a license tax on telegraph poles and wires, the company may show that the municipality has made no inspection, and has neither paid out any money nor incurred any expense for that purpose, and that the fee is grossly disproportioned to the amount of any expense that might have been reasonably and fairly incurred for the most careful, thorough and efficient inspection and supervision possible, and for all measures and precautions that could be required to be taken by the municipality for the safety of its citizens and the public.

Argued Nov. 17, 1903. Appeal, No. 24, Oct. T., 1903, by defendant, from order of C. P. Delaware Co., June T., 1902, No. 14, making absolute rule for judgment for want of a suf-

ficient affidavit of defense in case of Norwood Borough v. Western Union Telegraph Company.   Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Reversed.

Assumpsit for a license tax on telegraph poles and wires. The opinion of the Superior Court states the case.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*H. B. Gill*, with him *Lindsay & Harvey* and *Read & Pettit*, for appellant.

*Edward P. Bliss*, for appellee.

OPINION BY RICE, P. J., July 28, 1904:

In New Hope Borough v. Western Union Telegraph Co., 16 Pa. Superior Ct. 306, we made the statement, and cited the authorities to support it, that the adoption by a city of an ordinance imposing a reasonable annual license fee for each pole and each mile of suspended wire erected and maintained by telegraph, telephone and electric light companies within city limits is a valid exercise of police power; second, that boroughs have equal powers with cities in that regard; third, that such ordinance is not, as to telegraph companies engaged in the business of transmitting messages between the several states of the Union, in violation of the commerce clause of the federal constitution ; fourth, that in an action to recover the license fee for a particular year, the same being payable at the beginning of the year, the fact that the borough or city did not expend money for inspection, supervision or police surveillance of the poles and wires in that year is not a defense.   No later decision of the Supreme Court of our state, or of the United States, requires a modification of the foregoing statement of the law, except as to the fourth proposition.   " If a corporation, although engaged in the business of interstate commerce, so carries on its business as to justify at the hands of any municipality a police supervision of the property and instrumentalities used therein, the municipality is not bound to

furnish such supervision for nothing, and may, in addition to ordinary property taxation, subject the corporation to a charge for the expense of the supervision: " Atlantic & Pacific Telegraph Co. v. Philadelphia, 190 U. S. 160 (23 Sup. Ct. Repr. 817). But since the judgment in the case now before us was entered, it has been authoritatively decided, that it is competent for the defendant (an interstate telegraph company) in such action to show that the municipality has made no inspection, and has neither paid out any money nor incurred any expense for that purpose, and that the fee is grossly disproportioned to the amount of any expense that might have been reasonably and fairly incurred for the most careful, thorough and efficient inspection and supervision possible, and for all measures and precautions that could be required to be taken by the municipality for the safety of its citizens and the public : Postal Telegraph Cable Co. v. Taylor, 192 U. S. 64 (24 Sup. Ct. Repr. 208). It was further held that these facts constitute a complete defense to the action, because they show that the ordinance was adopted as a means for raising revenue, and not to repay expense for inspection, and therefore, as we understand the theory upon which the decision proceeds, imposes an unconstitutional burden upon interstate commerce. It would seem to be necessarily involved in the foregoing ruling that the charge cannot be imposed for the purpose of providing a fund to indemnify the municipality against damages for which it may be held liable by reason of the negligent construction and maintenance of the telegraph line. And this proposition is not left to mere inference. The court said : " The liability to pay for injuries that might arise from the bad condition of the poles and wires, arising from the neglect of the company to inspect and supervise the same, is not a liability which the municipality is entitled to recover from the company in advance of its happening, but it is simply one of the reasons for an inspection by the borough, which shall be most carefully and continuously performed, in order that injuries may not arise from the neglect of such supervision."

As to the disproportion between the charge fixed by the ordinance, and the sum that would cover the expense of such inspection and supervision, the averments of the affidavit of defense in the present case are not as explicit as that made in the

case cited or in the case of Lower Merion v. The Postal Telegraph Co., 25 Pa. Superior Ct. 306 ; but being coupled with the other averments as to the perfect condition in which the defendant maintains its poles and wires, the place where they are maintained, the surrounding conditions, the constant supervision and inspection it gives to them, and the further averment that the borough has expended nothing for supervision and inspection—from which it is fairly inferable that it gave none—the case is brought within the principle upon which the cases above referred to were decided by the Supreme Court of the United States.

The second defense set up is based on the averment that the defendant's line of telegraph is " on a country turnpike road, the private property of the Chester & Darby Telford Company." It is argued that the duty of maintaining and keeping the road in repair and in a condition of safety for the public using the same, and the correlative liability for neglect of that duty, devolve wholly upon the turnpike company, and, therefore, there is no necessity for any inspection by the borough authorities of the poles and wires of a telegraph company erected and maintained thereon. This might be so, if the police power of the borough were confined exclusively to regulations which tend to its protection against pecuniary liability. But we cannot agree that it is so limited in its scope. " Police power may be delegated to municipal corporations, and in the exercise of this power they may compel the turnpike corporations to do that which the safety of the public demands. It is not, however, easy to set bounds to this power : " Elliott on Roads and Streets (2d ed.), sec. 74. We need not undertake that difficult task in this case ; for this ordinance interferes not in the slightest degree with the turnpike company ; it relates wholly to the poles and wires of the telegraph company. A turnpike road is a public highway ; every traveler has the right to use it upon paying toll ; it cannot be closed against the public use ; its obstruction is a public nuisance for which indictment will lie. See Northern Central Ry. Co. v. Commonwealth, 90 Pa. 300 ; Pittsburg, etc., R. R. Co. v. Commonwealth, 104 Pa. 583 ; Lancaster Turnpike Co. v. Rogers, 2 Pa. 114 ; McManus's Appeal, 5 Pa. Superior Ct. 65. A telegraph company can acquire no right from a turnpike company, whose road is a bor-

ough street, to maintain its wires and poles in such negligent manner as to endanger the lives and limbs of those who traverse the same or to interfere, unnecessarily, with the extinguishment of fires, or, unnecessarily, to impede travel. It seems to us equally clear that the borough has power to make reasonable regulations to prevent what, if done on any other public highway within its limits, would be a public nuisance, provided no right or franchise of the turnpike company is abridged or infringed by such regulations. It may be that the expense of proper supervision and inspection by the borough of poles and wires located on a turnpike would be somewhat less than upon other streets, but we are not convinced that the borough is not justified in going to any expense for that purpose, or that it exceeds its powers in exacting reimbursement therefor from the telegraph company.

Judgment reversed and procedendo awarded.