## Robinson Township v. Bell Telephone Co.

*Karl D. Enzian* and *Rahauser, Van der Voort, Royston & Robb,* for plaintiff.

*Patterson, Crawford, Arensberg & Dunn,* for defendant.

MCNAUGHTER, J., July 9, 1947.—Plaintiff, now by amendment designated as "Robinson Township by its Board of Supervisors", brought suit in assumpsit against defendant, the Bell Telephone Company of Pennsylvania, alleging the following: That the Township Supervisors of Robinson Township, a second class township, have adopted a resolution providing for the payment of an annual inspection fee in connection with the use of poles along the township highways; that a copy of the resolution was sent the defendant with a request for information concerning the number of its poles which would be subject to an inspection fee; that defendant has refused to provide the information

or to pay an amount representing an inspection fee; and that defendant has become indebted to plaintiff for such fees in the sum of $286.25, together with a penalty of 20 percent as provided by the township resolution. Defendant first filed an affidavit of defense raising questions of law which were later overruled. It then filed an affidavit of defense on the merits denying liability and thereafter the case came on for hearing in a nonjury trial. The parties stipulated of record that no formal findings of fact or conclusions of law be filed, but that the trial judge return what would amount to a jury's verdict, with opportunity to be given both sides to be heard before the entry of judgment, and with their right of appeal preserved. Since the trial the case has remained undisposed of because one of counsel was delayed in the preparation of briefs.

The testimony and evidence before us relates to several subjects, among them the following: The provisions of the township ordinance; the character of plaintiff's inspection of poles and the qualifications of its inspector; defendant's chemical treatment, installation, maintenance, and inspection of its poles; the general work of the State Highway Department and its supervision of township roads and inspection of poles; the number of miles of roads in second class townships as compared with those in cities, boroughs, and townships of the first class, and the number of miles of county roads and State roads; the number of second class townships and the number of first class townships and the percentage of roads in the two classes of townships as compared with all other roads; and the number of poles owned by defendant within the Commonwealth and within the western area thereof, together with the number of roads in cities, boroughs, first class and second class townships. Most of this evidence, some of it offered by plaintiff and some by defendant, supplies merely the background for the determination of the question presented to us,

whether a second class township has authority to impose upon defendant a license fee for the inspection of its poles.

The authority to impose the fee involved, it is agreed, must, if it exist, spring from police power. The Supreme Court of the United States referred to that in Western Union Telegraph v. New Hope, 187 U. S. 419: "It is conceded that the borough had the right in the exercise of its police power to impose a reasonable license fee upon telegraph poles and wires within its limits." The question then is whether a second class township possesses general police power.

A governmental unit, whether it be a city, borough, or township, can function only through the powers expressly granted by the legislature and those powers incident or related thereto as essential and necessary to carry out the declared objects contained in such express powers. And " 'any fair, reasonable doubt as to the existence of power is resolved by the courts against its existence in the corporation, and therefore denied: Dillon on Municipal Corporations, sec. 89' "; Valley Dep. & Tr. Co., etc., 311 Pa. 495, 497.

Police power was granted to cities, boroughs, and first class townships and because of that their right to exact license fees for the inspection of poles has been upheld. In the case of cities of the first class police power is granted in the provision that they "Shall have the power to make all such ordinances, by-laws, rules, and regulations . . . as may be expedient or necessary for the proper management, care, and control of the city and its finances, and the maintenance of the peace, good government, safety, and welfare of the city and its trade, commerce, manufactures; and the exercise of full and complete powers for local self-government in matters of police. . . ." Act of March 25, 1929, P. L. 66, §1, 53 PS §3451; as to cities of the second class, such power is granted by the authority given "To make all such ordinances, by-laws, rules and regu-

lations . . . as may be expedient or necessary, in addition to the special powers in this section granted, for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government and welfare of the city, and its trade, commerce and manufactures. . . ." Act of March 7, 1901, P. L. 20, art. XIX, §3, 53 PS §9686; as to cities of the third class, it is provided that they may adopt such "ordinances, by-laws, rules and regulations . . . as may be expedient or necessary for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government, safety and welfare of the city, and its trade, commerce and manufactures . . ." Act of June 23, 1931, P. L. 932, §2403, as amended, 53 PS §12198-2403; as to boroughs, that they shall have the power to enact laws, rules, regulations and ordinances, which they "shall deem beneficial to the borough" and "to make such other regulations as may be necessary for the health and cleanliness and the beauty, convenience, comfort, and safety of the borough". (Act of May 4, 1927, P. L. 519, §1202, 53 PS §13329) ; and as to townships of the first class, power is granted "to adopt resolutions and ordinances", and "to take all needful means for securing the safety of persons or property within the township": Act of June 24, 1931, P. L. 1206, §1502, 53 PS §19092-1502. See City of Allentown v. Western Union Telegraph Co., 148 Pa. 117; Kittanning Borough v. American Natural Gas Co., 239 Pa. 210, and Lower Merion Township v. Postal Telegraph Cable Co., 25 Pa. Superior Ct. 306.

No such language as that quoted has been used by the legislature with reference to second class townships and we have been unable to find statutory authority granting them general police power. It is true that they have been given certain powers particularly enumerated, such for example as the authority to enact zoning provisions, and the right, upon petition, to ap-

point police officers when occasion requires. But general police power cannot be grounded upon or derived from such grants of power. Rather it is indicated that, because of lack of police power, such townships must, to exercise certain authority, be specifically granted it. It is worthy of note that where cities, boroughs, and first class townships are concerned, the statute in each instance makes specific provision for a police force, but in addition thereto and separate and apart therefrom employs the general language we have quoted, vesting the municipality with police power (as to cities of the first class see Act of March 25, 1929, P. L. 66, 53 PS §3451; second class, Act of March 7, 1901, P. L. 20, §3, 53 PS §§9648 and 9649; third class, Act of June 23, 1931, P. L. 932, §§2001, 2005, 53 PS §§12198-2001 and 2005; boroughs, Act of May 4, 1927, P. L. 519, §1125, 53 PS §13201, and townships of the first class, Act of June 24, 1931, P. L. 1206, §1502, 53 PS §19092-1502 V). For the nature, scope, and variety of subjects of police power see 3 McQuillin Municipal Corporations (1943), ch. 25.

General supervision of township roads, in their construction and maintenance and as affecting township accounts, and the approval of township contracts, are, by the provisions of the various acts of assembly covering such cases, within the exclusive jurisdiction of the State Highway Department and the township supervisors are in many of their activities to be regarded merely as its agents. In Robinson Township, according to the evidence, there are some 13 miles of State roads over which the Commonwealth has exclusive control and approximately 26 miles of township roads. These form a part of the road system of the State and are subject to regulations of the State Highway Department. The township resolution before us provides for inspection of "all poles, attachments, wires, and cables on or crossing any of the roads, streets, alleys,

lanes, or highways within the township", and requires the owner to correct "defects" and to make "changes necessarily to be made for the safety of the public". Plaintiff proposes to enter a field set apart to the State Highway Department. It is easily conceivable that a situation might arise where an owner of a pole or attachment would be required by the township to act in direct conflict with the regulations of the department.

In The Second Class Township Law of May 1, 1933, P. L. 103, 53 PS §19093-1156, upon which plaintiff must rely, it is provided:

". . . Nor shall any telephone, telegraph, or electric light or power poles, or any coal tipples or any other obstructions be erected upon or in any portion of a township highway except under such conditions, restrictions and regulations, and subject to the payment of such fees for permits as may be prescribed and required by the State Highway Department, not exceeding the reasonable cost of issuing the permit and expense of inspecting the work authorized by such permit upon completion thereof. All fees so collected for permits shall be paid into the State Treasury."

In the case of all municipalities other than second class townships it is required that applications for permits to erect poles shall be made not to the State Highway Department, but to the municipality. It would be natural to expect, and the law provides, that the authority granting the permit to erect a pole should enforce its terms both at the time of erection and subsequently. In the case of a city, borough, or first class township, that authority is the municipality. In the case of a second class township it is the State Highway Department.

The contention that the safety of the public would be jeopardized if the position of plaintiff were not upheld appears groundless. Under the Act of 1933, supra (53 PS §19093-702, clause XII) the township super-

visors have power to remove any nuisances or dangerous structure on public or private grounds. And further, the evidence shows that adequate inspection of poles is made not only by defendant but by employes of the State Highway Department.

In the only case cited involving the present question, that of Easttown Township v. Merion and Radnor Gas and Elec. Co., 18 Dist. R. 400 (1908), it was held that a second class township did not have the authority to impose a license fee. The following is taken from the court's opinion:

"The highways are the property of the state. Primarily, all legislation respecting their use must come from the state. Only where the state has delegated its authority in the premises may legislation originate elsewhere. Cities, boroughs and townships of the first class may enact ordinances regulating the use by gas and electric companies of the highways within their limits, because the legislature has expressly communicated this power to them; townships of the second class may not do so, because, as to their highways, the state has delegated no such authority, but has retained control, and has granted their use to gas and electric companies, without the consent of the supervisors and without condition. The supervisors are charged with the power and duty to see that the highways are kept clear of obstacles to easy and convenient travel, and by direct supervision they must see that poles are so placed and trenches so opened and filled that public travel will not suffer, but this is the extent of their authority in the premises."

That language also states the case today under present statutes.

We are of the opinion that a second class township does not have authority to impose a license fee for the inspection of poles. Because of that view it is unnecessary to discuss other points raised by defendant.