St. Louis Southwestern Railway Company *v.* State
*Ex rel.* Hal L. Norwood, *Attorney General.*

Opinion delivered January 27, 1913.

1. Taxation—corporation franchise tax.—The tax on the franchise of corporations under Acts 112 and 251 of the public acts of 1911, is valid, as it is a tax on the privilege or right granted by the

State to the corporation to do business in the State, and it is not an asset of the corporation whose value can be ascertained for the purpose of taxation as property. (Page 327.)

2. TAXATION—SAME—INTERSTATE COMMERCE—RAILROADS.—The franchise tax as provided in Act 112 of the public acts of 1911, under which the franchises of railroad companies are declared to be property for the purpose of taxation, where the value of such franchise is based solely upon the proportion of the outstanding capital stock of the corporation, represented by property owned and used in business transacted within the State, is not a tax upon interstate commerce. (Page 330.)

3. TAXATION—CORPORATIONS.—A corporation owes its existence to the State, and the right to enjoy this privilege is a subject of taxation, and there is no constitutional restriction against such a tax on such right. (Page 326.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

The Attorney General, proceeding under Act No. 112, entitled, "An Act for an annual franchise tax on corporations doing business in the State of Arkansas" (Acts of Arkansas, 1911, page 67), brought this suit to recover the franchise tax levied against the St. Louis Southwestern Railway Company by the Arkansas Tax Commission under the provisions of said Act for the year 1911.

The complaint alleges that the amount of taxes is $6,798.26, together with a penalty of twenty-five per cent, amounting to $1,699.56, making a total of $8,497.82. The defendant, St. Louis Southwestern Railway Company, is a railway corporation organized under the laws of the State of Missouri. It is engaged in the business of a common carrier of freight and passengers, and owns and operates lines of railroad in the States of Arkansas, Missouri, Illinois and Louisiana. Act No. 112 requires each corporation doing business in the State to make a report to the Arkansas Tax Commission showing, among other things, the total amount of its capital stock authorized, subscribed, issued, outstanding and paid up, the

market value of the same, and the value of the property owned and used by the corporation in the State, and the value of the property owned and used by it outside of the State. Section 6 of the Act is as follows:

"Upon the filing of the report provided for in sections 4 and 5 of this Act, the commissioner or assessor, as the case may be, from the facts thus reported and any other facts coming to its or his knowledge bearing upon the question, shall determine the proportion of the authorized capital stock of the company represented by its property and business in this State on or before July 20, and shall report the same to the Auditor of the State, who shall charge and certify to the Treasurer of the State on or before August 1, for collection as herein provided, annually from such company, in addition to the initial fee otherwise provided by law, for the privilege of exercising its franchise in this State one-twentieth of one per cent each year thereafter upon the proportion of the outstanding capital stock of the corporation represented by property owned and used in business transacted in this State."

The defendant under protest made the report required by the Act. This report, among other things, showed that the total amount of its authorized capital stock was $55,000,000, and the total amount of issued and outstanding stock was $36,249,750. The Arkansas Tax Commission found the proportion of outstanding capital stock represented by property owned and used by the defendant in business transacted in the State of Arkansas for the year 1911 to be $13,596,520, on which the franchise tax amounted to $6,798.26. On May 4, 1911, the Legislature of the State of Arkansas passed Act No. 251, entitled, "An Act to provide the manner for assessing for taxation the property of railway, express, sleeping car, telegraph, telephone and pipe line companies." Acts of Arkansas 1911, page 233. This Act provides that the property of railroad corporations and the others named in the title should be assessed by the Arkansas Tax Commission. Section 1 of the Act pro-

vides that said commission shall ascertain the par value of all property, tangible and intangible, including the franchise (except the right to be a corporation), railway tracks, rolling stock, water and wood stations, passenger and freight depots, office furniture, other property real and personal owned by each of the railroad corporations having existence under the laws of this State and running through and into this State. Section 2 is as follows:

"The franchise (other than the right to be a corporation), of all railroads, express, telegraph and telephone companies, are declared to be property for the purpose of taxation and the value of such franchises shall be considered by the assessing officers when assessing the property of such corporations. In valuing for assessment purposes the property of such corporations the Arkansas Tax Commission shall determine, the total value of the entire property of the corporation, tangible and intangible."

Proceeding under this Act, the Arkansas Tax Commission assessed the property of the defendant corporation within the State, of Arkansas for the year 1911 in the sum of $11,260,244, on which defendant paid taxes for various purposes including State, county, school, road and municipal taxes to the amount of $239,388.84. The answer of the defendant set forth these facts and challenged the validity of Act 112 on the grounds that it amounted to double the taxation, and that it is a regulation of interstate commerce and a burden thereon. The Attorney General filed a demurrer to the answer of the defendant, which was sustained by the court. From the decree entered, the defendant has duly prosecuted an appeal to this court.

*S. H. West, Bridges & Wooldridge* and *Roy F. Britton,* for appellant.

1. The State can not regulate, burden or tax interstate commerce, nor can it levy a tax on the privilege or right to engage in interstate commerce. 121 U. S. 230; 122 *Id.* 326; 127 *Id.* 411; 128 *Id.* 39; 132 *Id.* 472; 210 *Id.*

217; 193 *Id.* 490; 190 *Id.* 160; 216 *Id.* 146; 68 Fed. 183; 127 U. S. 411; 82 *Id.* 232; 142 *Id.* 339; 155 *Id.* 688; 127 *Id.* 640; 223 *Id.* 298.

2. The tax is invalid, because, (1) it imposes a tax on property outside the State, and (2) it imposes a tax on the interstate business of the company within the State. 216 U. S. 56; 155 *Id.* 688.

3. Act No. 112, in connection with Act No. 251, subjects appellant's property to double taxation. 78 Ark. 187.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1. The Constitution provides how foreign corporations may be authorized to do business. Art. 12, § 11; Art. 16, § § 5, 7; 78 Ark. 187, and § 6936, Kirby's Digest, do not sustain the contention of appellant as to double taxation.

2. No charge or burden is attempted to be placed upon interstate commerce. 63 Ark. 589; 142 U. S. 217.

3. A statute requiring every corporation * * * to pay an annual tax for franchise to be determined by the amount of its gross transportation receipts, and further provides that when applied to a railroad lying partly within and partly without the State * * * the tax shall be equal to the proportion of the gross receipts in the State, * * * does not conflict with the Constitution of the United States. 142 U. S. 217. The tax was imposed upon the franchise, although based in part upon the gross receipts. 145 U. S. 23; 155 *Id.* 699; 158 *Id.* 621; 191 *Id.* 388; 201 *Id.* 296; 210 *Id.* 224; 165 *Id.* 220; 210 *Id.* 224-226; 223 *Id.* 298; 216 *Id.* 1; 60 L. R. A. 1.

HART, J. (after stating the facts) : Counsel for defendant contend that it has paid its taxes under Act No. 251 of Acts of 1911, providing for the taxation of its property in the State of Arkansas, and that the imposition of a franchise tax under Act No. 112 of Acts of 1911 is invalid, but we can not agree with them in their contention. The Constitution of the State of Arkansas pro-

vides how foreign corporations may be authorized to do business in the State in the following language:

"Foreign corporations may be authorized to do business in this State under such limitations and restrictions as may be prescribed by law. *Provided,* that no such corporation shall do any business in this State except while it maintains therein one or more known places of business and an authorized agent or agents in the same upon whom process may be served; and, as to contracts made or business done in this State, they shall be subject to the same regulations, limitations and liabilities as like corporations of this State, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this State, nor shall they have power to condemn or appropriate private property." Article 12, section 11, of the Constitution of 1874.

Under the head of "finance and taxation," our Constitution, article 16, section 5, is as follows:

"All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value."

Article 16, section 7, is as follows:

"The power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the State may be a party."

Our court has held that a corporation owes its existence to the State, and the right to enjoy this privilege is a subject of taxation, and that upon the power of the Legislature to impose such a tax there exists no restriction in our Constitution. In the case of a foreign corporation, the tax or license is paid for the privilege of exercising its corporate powers in the State. *Baker* v. *State,* 44 Ark. 138, and cases cited. In the case of *Standard Underground Cable Company* v. *Attorney General,*

46 N. J. Eq. 270, 19 Am. St. Rep. 394, the question as to whether a certain license tax imposed upon the corporation was a tax upon corporate property was involved. The corporation insisted that the tax was a violation of that provision of the Constitution of New Jersey which provides "that property shall be assessed for taxation under general laws and by uniform rules according to its true value." The court said:

"The fault of this position is the assumption that this tax is one upon property. Such, manifestly, is not the case. The law in question imposes a tax on certain corporations by way of a license for exercising corporate franchises. It is declared to be such tax by the Act, and, although it is laid on this class of corporations with respect to the capital stock, the tax possesses the legal quality of a license or franchise tax. *Evening Journal Association* v. *State Board of Assessors*, 47 N. J. L. 36; 54 Am. St. Rep. 114; Cooley on Taxation, (2 ed.) 379, and cases cited."

In the passage of the act in question, no doubt the Legislature had in mind the fact that the right or privilege to be or exist as a corporation, although a matter of value to the stockholders of the corporation, is not an asset of the corporation and transferrable as such, and that its value can not, under ordinary rules, be ascertained for the purpose of taxation as property, but since it is a privilege or right granted by the State, a franchise tax may be imposed upon this right or privilege for the purpose of raising revenue. We think it plain, then, under our Constitution and decisions, that the act in question is valid unless it be held a burden upon interstate commerce.

It is earnestly insisted by counsel for defendant that the tax in question, although levied in the guise of a franchise or excise tax, is in reality a taxation of interstate commerce. They rely upon the decision of the Supreme Court of the United States, cited below, and other decisions of a like character to sustain their position. *Western Union Tel. Co.* v. *State of Kansas*, 216 U. S. 1; *Lud-*

*wig* v. *Western Union Tel. Co.,* 216 U. S. 146; *Oklahoma* v. *The Wells-Fargo & Co.,* 223 U. S. 298; *U. S. Express Co.* v. *Minn.,* 223 U. S. 335.

It is settled by these decisions that State laws may not burden interstate commerce, but the right of the State to tax property although it is used in interstate commerce, is equally well settled by them. In the case of the *U. S. Express Co.* v. *Minn., supra,* the court said:

"The difficulty has been, and is, to distinguish between legitimate attempts to exert the taxing power of the State and those laws which, though in the guise of taxation, impose real burdens upon interstate commerce as such. This difficulty was recognized in *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217, wherein the possible differences between the decisions in *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. page 326, and *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. page 217, were commented upon and explained. Mr. Justice Holmes, speaking for the court, said:

" 'By whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution.' *Postal Tel. Cable Co.* v. *Adams,* 155 U. S. 688, 697. See *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania,* 158 U. S. 431, 438, 439. The question is, whether this is such a tax. It appears sufficiently, perhaps from what has been said, that we are to look for a practical, rather than a logical or philosophical distinction. The State must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand, the State can not tax the interstate business. The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. When a Legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce. A practical line

can be drawn by taking the whole scheme of taxation
into account. That must be done by this court as best
it can. In that case the statute of Texas was condemned,
because it appeared to the court to be an attempt to
reach the receipts from interstate commerce by a tax of
one per cent, or what was equal to the same thing, on
gross receipts arising from such commerce, when it ap-
peared from the judgment of the State court and the
argument on behalf of the State that another tax on the
property had already been levied, covering its full value
as a going concern. The tax under consideration was
held to be merely an effort to reach the gross receipts,
not disguised by the name of an occupation tax or in any
way helped by the words ''equal to.'' Upon like reason-
ing, the statute of Oklahoma was condemned in the case
of *Oklahoma* v. *Wells Fargo & Co.,* decided today, *ante,*
page 298.''

The statute under consideration in that case was
upheld because the court said that it was a part of a sys-
tem long in force in Minnesota, passed under the author-
ity of the State Constitution, and that it was intended to
afford a means of valuing property of express companies
within the State. Continuing, the court said:

''While the determination that the tax is a property
tax measured by gross receipts is not binding upon this
court, we are not prepared to say that this conclusion is
not well founded, in view of the provisions and purposes
of the law.''

In the case at bar the gross receipts from all sources
of the railway company have not been used as a means
for ascertaining the value of the property in the State.
By the express provision of Act No. 251, enacted for
the purpose of providing the manner for assessing
for taxation the property of railroad companies the right
to be or exist as a corporation was expressly excluded
from the items which go to make up the value of the
property of the corporation. As we have already seen,
the right or privilege to be or exist as a corporation is the
subject of taxation, and this right or privilege is not

considered in fixing the value of the property of corporations under Act No. 251, the general tax act. Our State has fixed a franchise tax based solely "upon the proportion of outstanding capital stock of corporations represented by property owned and used in business transacted in this State." The act in question seems to have been drawn with great care and with the evident purpose to exclude any contention that the tax was made upon interstate commerce. The framers of the act evidently considered the cases of *Ludwig* v. *Western Union Tel. Co., supra,* and the *Western Union Tel. Co.* v. *Kansas, supra,* and therefore intended to pass an act that would not be contrary to the principles therein announced. We think it has done so. It will be noted in the Ludwig case, the statute requires a foreign corporation engaged in interstate commerce to pay as a license tax for doing intrastate business, a given amount on its capital stock whether employed within the State or elsewhere, and the court held that on the authority of the Kansas case, the statute in question was unconstitutional and void because it directly burdened interstate commerce and imposed a tax on property beyond the jurisdiction of the State. So, in the Kansas case, the State demanded in the form of a fee or tax a given per cent of all the capital stock of foreign corporations, without any discrimination between the capital represented in business and property of the telegraph company outside of the State, and the capital representing such of its business and property as was wholly local to the State, and the court held that the act for every practical purpose was in essence not simply a tax for the privilege of doing local business in the State, but was a burden and tax on the company's interstate business, and on its property located or used outside of the State. The court said:

"To hold otherwise, is to allow form to control substance. It is easy to be seen that if every State should pass a statute similar to that enacted by Kansas, not only the freedom of interstate commerce would be destroyed, the decisions of this court nullified, and the

business of the country thrown into confusion, but each State would continue to meet its own local expenses not only by exactions that directly burdened such commerce, but by taxation upon property situated beyond its limits.''

In the case at bar, our State has not fixed a franchise tax based upon a per cent of the entire capital stock, but has based it solely "upon the proportion of the outstanding capital stock of the corporation represented by property owned and used in business transacted in this State." In the case of *Wells Fargo & Co.'s Express* v. *Crawford County,* 63 Ark. 576, at page 589, the court said:

"The Legislature has the power to classify property for the purpose of taxation and to provide for the valuation of different classes by different methods. Constitution 1874, article 15, section 5; *St. L., I. M. & S. Ry. Co.* v. *Worthen,* 52 Ark. 529.   *   *   * Without such classification, the property of such companies could not be assessed as a unit, and the Legislature has the power to require that the value of such property be ascertained by considering it in that way. It has been many times held, both by the Supreme Court of the United States and by State appellate courts, that the property of railroads, telegraph, sleeping car and express companies engaged in interstate commerce may be valued as a unit for the purpose of taxation, and that a proportion of the whole, fairly and properly ascertained, may be taxed by the State in which it is situated. *Sanford* v. *Poe,* 17 Supreme Court Rep. 305; *Western Union Tel. Co.* v. *Taggart,* 163 U. S. 1; *Pittsburg Ry. Co.* v. *Backus,* 154 U. S. 421; *Pullman Car Co.* v. *Pennsylvania,* 141 U. S. 18; *W. U. Tel. Co.* v. *Attorney General of Mass.,* 125 U. S. 530; *State* v. *Jones,* 51 Ohio St. 492.'

We think the act in question, is valid and comes squarely within the principles announced in the case of *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, where the court made the following ruling:

"A State statute which requires every corporation, person or association operating a railroad within the State to pay an annual tax for the privilege of exercising its franchises therein to be determined by the amount of its gross transportation receipts, and further provides that, when applied to a railroad lying partly within and partly without the State, or to one operated as a part of a line or system extending beyond the State, the tax shall be equal to the proportion of the gross receipts in the State, to be ascertained in the manner provided by the statute, does not conflict with the Constitution of the United States; and the tax thereby imposed upon a foreign corporation, operating a line of railway, partly within and partly without the State, is one within the power of the State to levy."

The decree will be affirmed.