THE STATE, Appellant, v. PIERCE PETROLEUM CORPORATION.—2 S. W. (2d) 790.

Court en Banc, February 4, 1928.

*North T. Gentry*, Attorney-General, *Claude E. Curtis*, Special Assistant Attorney-General, and *W. E. Sloat*, Special Assistant Attorney-General, for appellant.

1022

*Fordyce, Holliday & White* for respondent.

RAGLAND, J.—Appellant's statement of the case, which is acquiesced in by respondent, is as follows:

"This case arises out of an action to recover delinquent franchise taxes. Defendant, respondent in this court, is a private corporation organized under the laws of the State of Delaware and licensed to do business under the laws of the State of Missouri. In compliance with our franchise-tax law, defendant made its report in writing to the State Tax Commission for the year 1926. Said report disclosed that said defendant corporation was organized in Delaware with two million five hundred thousand (2,500,000) shares of stock having no stated par value; that three and one-tenth per cent of the total number of shares were employed within the State of Missouri; that seventy-seven thousand five hundred (77,500) shares of stock represented three and one-tenth of the total number of shares; and that said seventy-seven thousand five hundred (77,500) shares of no-par value represented that part of defendant's outstanding capital stock and surplus said to be employed in Missouri.

"Upon the basis of this report, the Tax Commission assessed a tax against the defendant corporation on the sum of seven million seven hundred and fifty thousand dollars ($7,750,000); that amount being arrived at by allotting to each no-par-value share of stock, said to be employed in this State, an arbitrary value of one hundred dollars each, as provided by law. The resulting tax was $3875. Defendant paid to the State of Missouri, $410.18, the amount it claimed it owed

for franchise tax for 1926, said amount being arrived at by basing the tax on the actual value of the no-par-value shares employed in this State, instead of giving an arbitrary value of one hundred dollars to each share. The balance of the tax, $3464.82, as assessed, remaining due and unpaid on June 1st (the delinquent date named in the statute), the State Treasurer certified the same to the Attorney-General for collection.

"The Attorney-General filed suit to collect the tax and agreed by stipulation to waive penalty and interest. Defendant filed its answer, setting up as a defense that there was no law authorizing the State to tax a corporation having share of stock with no stated par value, for the purpose of the franchise tax at one hundred dollars per share; and further, that such a method of taxation was unconstitutional.

"The case was submitted to the court on the pleadings, and judgment was rendered for the defendant. From this judgment, plaintiff appeals to this court."

It is the State's contention that Section 12 of an act relating to stock corporations, passed by the General Assembly in 1921 (Laws 1921, p. 664), requires that for the purpose of computing a corporation's annual franchise tax each share of its stock which is without any nominal or par value shall be considered the equivalent of a share having a nominal or par value of one hundred dollars.

Respondent's position is: First, that said Section 12 in no way relates to the computation of the franchise tax which is required to be paid by corporations under the laws of this State; and, second, that if said section be construed as requiring that an arbitrary value of one hundred dollars per share be put on no-par-value stock for the purpose of computing the franchise tax, the section in that respect violates designated provisions of the State Constitution and the Constitution of the United States. The proper construction of the statute is therefore the first, and possibly the only, question for determination.

I. Prior to 1921 all the statute laws of this State relating to business corporations, other than insurance companies, tacitly assumed that any such corporation would have a named capital stock divided into a specified number of shares of a designated par value. And capital stock, from some angle, was made the basis for the imposition of numerous duties, restrictions and regulations. By the act heretofore referred to, stock corporations, with certain exceptions not material here, were authorized to issue both preferred and common stock, without any nominal or par value, by stating in their articles of association or certificate of incorporation, "in lieu of statements which may be prescribed by law as to the amount of the capital stock and the number and par value of shares into which it is divided:

(a) The number of shares with nominal or par value, and the number of shares without nominal or par value, that may be issued by the corporation, and the class, if any, into which such shares are divided; (b) the nominal or par value shares of stock other than shares which it is stated are to have no nominal or par value; (c) the amount of capital with which the corporation will begin business.'' [Sec. 1.] Section 3 of the act provided that the stated capital of a corporation issuing shares without nominal or par value should be the capital with which the corporation begins business increased by any net additions thereto, or diminished by any net deductions therefrom. Section 4 provided that preferences, rights, limitations, privileges and restrictions might be stated in dollars and cents per share in respect to shares of stock without any nominal or par value. Section 5 provided that such shares might be issued and disposed of by the corporation issuing them for such consideration as might be prescribed or authorized in the articles of association or certificate of incorporation, or, if not so prescribed, then for such consideration as might be fixed by the stockholders or by the board of directors acting under authority of the stockholders. And Section 11 provides that except as to preferences, rights, limitations, privileges and restrictions, if any, shares of stock without nominal or par value should be deemed to be an aliquot part of the aggregate capital of the corporation issuing the same and equal to every other share of stock of the same class. From numerous provisions found throughout the act, and particularly those of Section 12 considered as a whole, it is manifest that it was the purpose of the Legislature in permitting corporations to issue shares of stock without any nominal or par value to impose upon them, so far as was consistent with the general purpose of the act, the same burdens, restrictions and regulations, which were then imposed by existing law upon other stock corporations, and which, as stated, were based in some respect on the amount of capital stock. Some of these provisions declare that for certain specific purposes ''the stated capital'' of this new kind of corporation shall be deemed its capital stock. For example, the following is found in the body of Section 12: ''For the purpose of any statutory provision limiting the amount of capital stock which a corporation may have, or prescribing the portion or amount or par value of stock or capital which must be subscribed or paid in cash or otherwise, whether at the time of formation, before commencing to do business, or from time to time subsequent thereto, the stated capital of a corporation having shares without nominal or par value, shall be deemed to be its capital stock or the amount thereof.'' Other provisions declare that for certain other purposes a share without nominal or par value shall be considered the equivalent of a share having a nominal or par value of one hundred dollars. Thus, in the concluding part of Section 9: ''In

any case, in which it is required by law that any action on the part of a corporation may be taken only with the authorization, consent or approval of its stockholders holding a specific amount or a specific fraction in amount of its capital stock, a share without nominal or par value shall be considered the equivalent of a share having a nominal or par value of one hundred dollars.'' And the first part of Section 12: ''For the purpose of computing any organization taxes required to be paid under the laws of this State, and such tax or taxes, if any, the determination of which is based on the par value of shares of stock and not on the number of shares or the actual or ascertained value thereof and for the purposes of any statutory provision limiting the relation between indebtedness and capital stock, each share of stock without any nominal or par value, under the provisions of this act, shall be considered the equivalent of a share having a nominal or par value of one hundred dollars.'' The construction of the provisions last quoted is the subject, in part, of the present controversy.

Deleting the portion of the provision which for the purpose in hand has no relevancy, and transposing some of its language, we have:

''Each share of stock without any nominal or par value, under the provisions of this act (that is, a share of stock without nominal or par value within the meaning and purview of the act), shall be considered the equivalent of a share having a nominal or par value of one hundred dollars,—for the purpose of computing any organization taxes required to be paid under the laws of this State, and such tax or taxes, if any, the determination of which is based on the par value of shares of stock, and not on the number of shares or the actual or ascertained value thereof.''

There is no dispute as to what is meant by ''organization taxes required to be paid under the laws of this State.'' Respondent concedes that the language refers to the fee, graduated according to the amount of capital stock, required of a domestic corporation at the time of filing its articles of association, as provided by Section 9735, Revised Statutes 1919, and the fee required of a foreign corporation, on its application to be licensed to do business in this State, based on the proportion of its capital stock represented by its property and business in the State, as provided by Section 9792, Revised Statutes 1919. In construing ''such tax or taxes, if any, the determination of which is based on the par value of shares of stock and not on the number of shares or the actual or ascertained value thereof, it is insisted that under the rule of *ejusdum generis* this language must be construed as meaning taxes of the same kind as ''organization taxes.'' But even so, the statute itself defines the class. And this is the class: ''such tax or taxes, if any, the determination of which is based on the par value of shares

of stock and not on the number of shares or the actual or ascertained value thereof." "Organization taxes" fall within that class. In addition to those taxes there was at the time of the passage of the Act in 1921, and there is now so far as we are advised, but one other corporation tax (not mere fee) falling within the class, namely, the annual franchise tax imposed by Section 9836, Revised Statutes 1919. According to that section, "Every corporation organized under the laws of this State shall . . . pay an annual franchise tax . . . equal to one-tenth of one per cent of the par value of its outstanding capital stock and surplus. . . . Every corporation, not organized under the laws of this State, and engaged in business in this State, shall pay an annual franchise tax . . . equal to one-tenth of one per cent of the par value of its capital stock and surplus employed in business in this State." (This section as amended in 1921 as to rate and in certain minor particulars is still in force.) It thus conclusively appears that the annual franchise tax is of the same kind as "organization taxes." Both are franchise taxes and both are assessed on the basis of "the par value of shares of stock and not on the number of shares or the actual or ascertained value thereof." We think there can be no doubt therefore but that the Legislature in employing the language under construction had in mind the annual franchise tax imposed upon corporations under said Section 9836.

II. The respects in which it is contended that the statute, as we have construed it, is unconstitutional may be summarized thus: As between corporations having a capital stock of stated par value and **Classification.** those issuing shares without nominal or par value, it provides for the levy of taxes which are not uniform upon the same class of subjects; it discriminates against corporations issuing shares without par value in favor of those having a capital stock of par value, and therefore denies the former the equal protection of the law.

The tax is not a property tax, but an excise levied upon the privilege of transacting business in this State *as a corporation*. [State v. Tax Commission, 282 Mo. 213, 221 S. W. 721.] It may therefore be computed according to any method the Legislature sees fit to adopt. That method may or may not take into consideration the value of the privilege taxed. It is only necessary that the resulting tax be not obnoxious to the constitutional requirements of uniformity and equality. [2 Cooley on Taxation (4 Ed.) sec. 860.] And those requirements are fully satisfied if the statute imposing the tax applies equally to all corporations in like conditions, and makes a reasonable and not a purely arbitrary classification. [City of St. Charles v. Schulte, 305 Mo. 124, 264 S. W. 654; Witham v. Stewart, 129 Ga. 48; Wheeler v.

Weighman, 96 Kan. 50; Knoxville & O. Railroad Co. v. Harris, 99 Tenn. 684.]

For the purpose of computing the tax the statute (said Section 9836 as supplemented by Section 12 of the Act of 1921), in effect, divides stock corporations into two classes: (1) those having a capital stock with a stated par value, and (2) those whose shares are without nominal or par value. It provides, with respect to the first, that the tax shall be computed on the par value of the capital stock and surplus; with respect to the second, that it shall be computed on an arbitrary valuation of one hundred dollars per share and surplus. There is, and can be, no question but that corporations falling within the same class, whichever one it may be, are treated precisely alike. The constitutionality of the statute seems therefore to depend solely upon whether its classification is reasonable and natural, in view of the object to be attained.

The validity of classifications similar to the one described in the preceding paragraph, from the standpoint of constitutional law, has recently been considered by a number of eminent courts. In dealing with a statute of Illinois very similar to the one under review, the Supreme Court of that State said:

" 'One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary. A distinction in legislation is not arbitrary if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. . . .'

"Before 1919 no-par-value stock was not authorized by the Laws of Illinois. The Act of 1919 authorized the use of such stock, and the amendment of 1923 says that shares of no-par-value stock shall be considered of the value of $100 for the purpose of computing the annual franchise tax. There is a sufficient difference between par-value stock and no-par-value stock to authorize this definite basis of valuation in computing the franchise tax of corporations authorized to issue no-par-value stock. The General Assembly has said substantially that corporations desiring to use no-par-value stock shall make that stock of such value, in actuality, as to bear a franchise tax computed upon a $100 valuation, or if the stock is not of such value, that the corporation shall bear this tax as one of the burdens of exercising the privilege conferred by law of using no-par-value stock." [Roberts & Schaefer Co. v. Emmerson, 313 Ill. 137, 148-149.]

The same case was later before the Supreme Court of the United States and that court, in considering the classification made by the Illinois statute, said:

"That there are differences of practical importance between the two classes of stock and the privileges of issuing and using them is

sufficiently evidenced by the very general adoption of legislation authorizing the issue of no-par-value stock, and by the widespread practice of issuing that type of corporate shares.

"The nature of the more important of these differences sufficiently appears from the provisions of the Illinois statute as interpreted and applied in the opinion below in the Supreme Court of Illinois. . . .

"These differences, both in the legal incidents and in the practical uses of the two classes of stock, not only are a basis for classification of them for purposes of taxation, but make unavoidable certain differences in the method of assessing this tax. Authorized capital stock cannot well be used as the measure of a tax unless some arbitrary value is assigned to the no-par shares; for they may be issued from time to time at varying prices, and until issued, they cannot have any value. To require the stock to be issued as a value fixed in advance of its issue, and to make that value the basis of the tax, would in effect abolish no-par stock. Because of the essential differences between the two kinds of stock, it is difficult to conceive of any other method of assessing the tax which would save the character of no-par value stock and not result in similar inequalities.

"The inequalities complained of result from a classification which, being founded upon real differences, is not unreasonable, and the discrimination which results from it is not arbitrary or prohibited by the Fourteenth Amendment. It is enough that the classification is reasonably founded upon or related to some permissible policy of taxation." [Roberts & Schaefer Co. v. Emmerson, 271 U. S. 56-57.]

In speaking of the reasonableness of the method of computing the franchise tax of corporations having capital stock without par value, such as is prescribed by our statute, the Supreme Court of Massachusetts said:

"Corporations with capital stock of a par value afford an easy measure for the computation of the excise. There is no such ready-at-hand measure for the computation of the excise upon corporations having capital stock without par value. Some excise must be exacted from them in fairness to other foreign corporations. The latter would have just ground for complaint if they were exempted altogether. It cannot be deemed oppressive to enact a general rule as to all such corporations that the excise shall be measured by the par value which most frequently prevails in corporations whose stock has a par value." [American Uniform Co. v. Commonwealth, 237 Mass. 42.]

In holding such a statute as we have constitutionally valid, the Supreme Court of Arkansas said:

"The power of the State to make reasonable classifications for purposes of regulation or of taxation has been often decided and never denied, and such classifications will not be overturned by the court if all corporations of the same class are treated alike. (Citing cases.)

The statute under consideration applies equally to all corporations organized on the same basis, both domestic and foreign, that is to say, corporations with non-par value stock. It may be true, as urged by counsel for appellees, and as shown by illustrations in the brief, that the statute may work a difference in the amount of tax as between corporations having the same amount of assets, but this argument is answered by the fact that a corporation may choose for itself whether it shall or shall not bring itself within the terms of this statute. It is a voluntary act of the corporation in accepting the statutory basis of par value, rather than to express a value in the face of the certificate. Such statutes are not uncommon, but, on the contrary, are in vogue in a great many of the states, such statutes generally prescribing a par value of $100.'' [State v. Margay Oil Corporation, 269 S. W. 63, 65.]

Our views accord with those which find general expression in the portions of the opinions quoted, and we accordingly hold that the statutory classification under consideration is one reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary. If we are right in so holding, it follows that the statute is not invalid on the constitutional grounds invoked by respondent.

The conclusion we have reached as to the classification made by the statute is not out of harmony with the holding in State v. Tax Commission, supra, decided before the passage of the Act of 1921, wherein it was said: ''The act before us (the original franchise tax statute) contemplates a tax upon the right to do business in accordance with the property actually used in the business.'' Under the statute as it now stands the basis or unit of measurement used in determining ''the property actually used in the business'' is the par value of the capital stock. With respect to one class of corporations the par value so used is that named in the articles of incorporation; with respect to the other, where no par value is specified in the articles, the usual one of one hundred dollars per share is made the unit. In neither case is par value an accurate measure of the assets of a corporation. The actual value of the shares of a corporation of the first class may be much less than par; while the value of the shares of the one belonging to the second class may be either less than one hundred dollars, or greatly in excess of that value. But the method provided by the statute is one of convenience and one which the Legislature in its discretion had the right to prescribe.

In addition to what has been said the further thought suggests itself, that the very act which authorizes a domestic corporation to issue shares of stock without nominal or par value provides that every such share shall be considered the equivalent of a share having a par value of one hundred dollars for the purpose of computing the annual franchise tax; in accepting

the privilege granted, such a corporation voluntarily assumes the burden imposed. And of course a corporation of another state, desiring to do business in this State, is not entitled to preferential treatment in that respect.

In conclusion it should be said that it is not contended, nor does it appear, that the method provided by the statute for computing the franchise tax of corporations such as respondent is confiscatory in effect, or that it operates to impose a tax upon property outside the State, or that it effects a burden on interstate commerce.

The judgment of the circuit court is reversed and the cause remanded to be further proceeded with in accordance with the views herein expressed. All concur.