72 P.(2d) 15

**SOUTHERN PAC. CO. v. STATE CORPORATION COMMISSION OF NEW MEXICO.**

No. 4213.

Supreme Court of New Mexico.

Sept. 8, 1937.

Frank H. Patton, Atty. Gen., and J. R. Modrall, Asst. Atty. Gen., for appellant.

E. R. Wright, of Santa Fé, and Del W. Harrington, of El Paso, Tex., for appellee.

BRICE, Justice.

The questions are: Is the manner of laying a franchise tax upon that portion of the appellee's capital stock represented by railway property and business in New Mexico illegal? Has such taxation been so applied to appellee as to deprive it of constitutional rights? And does the act under which the tax was laid violate certain prohibitions of the Constitution of the United States?

The tax was assessed and levied by the State Corporation Commission by virtue of chapter 116, N.M.L.1935; sections 2, 4, and 6 of which are as follows:

"Sec. 2. Every domestic or foreign corporation for profit engaged in any business in this State, beginning with the calendar year 1935, shall pay to the Corporation Commission on or before the first day of May of each year, an annual franchise tax at the rate of One ($1.00) Dollar for each One Thousand ($1,000.00) Dollars, or fraction thereof, of the par value of that proportion of its authorized and issued capital stock represented by its property and business in this state, to be assessed by the State Corporation Commission as provided in this Act. The tax hereby imposed shall be in addition to all property taxes and other taxes and fees now or hereafter required by law."

"Sec. 4. Every foreign corporation for profit engaged in business in this State shall annually on or before the fifteenth day of March, make and file with the Commission, a report in such form as the Commission may prescribe, and signed and sworn to by the president, vice-president, secretary or principal accounting officer of the corporation, which report shall show as of the first day of January preceding, the following: * * *

"(5) The amount of authorized capital stock; the amount of capital stock subscribed; the amount thereof issued and outstanding and the amount of capital stock paid up. * * *

"(7) The value of the property owned and used by the corporation in this State and where situated; and the value of the property owned and used outside of this state and where situated.

"(8) The total gross receipts derived from its property and business both within and without this state during the last preceding year. * * *

"From such report or such other information as it may be able to procure, the Commission shall prior to the fifteenth day of April of each year, determine the proportion of the authorized and issued capital stock of such corporation represented by its property and business in this State and shall assess the amount of the annual state franchise tax to be paid by each such corporation, at the rate of One ($1.00) Dollar for each one thousand dollars, or fraction thereof, of the par value of that proportion of its issued capital stock, represented by its property and business in this State, as determined by the Commission, and which tax shall attach as of January 1st of the year in which assessed."

"Sec. 6. In making the assessment provided by this Act there shall be excluded the property of any corporation situate without the State of New Mexico, or used exclusively in interstate or foreign commerce."

The proportion of the capital stock of the appellee, as a basis for taxation, was determined by the following formula: To the total value of appellee's property within and without the State of New Mexico was added the total gross receipts from its business for the year of 1934. In like manner to the value of its property in

New Mexico was added the gross receipts from intrastate traffic of the corporation's business in New Mexico. The latter amount is .0218 per cent. of the former; and that per cent. of the total capital stock of the corporation was determined to be subject to the tax as "the par value of that proportion of its authorized and issued capital stock represented by its property and business in this state."

Domestic corporations, by other provisions of the act, are subjected to the same tax, so there is no claim of discrimination against appellee.

█ The words "property and business in this state," as used in section 2 of the act, are construed by the State Corporation Commission to mean all property of appellee in New Mexico not used exclusively in interstate business, plus the total gross receipts from intrastate business therein; the sum of which represents the authorized and issued capital stock allocated to such corporation's property and business in New Mexico as a basis for the tax. This seems to be the legislative intent.

█ The nature of the tax as expressed in the title is as follows: "An Act to Levy an Annual Franchise Tax on Domestic and Foreign Corporations for Profit Doing Business in This State, for the Privilege of Carrying on, doing Business, or the Continuance of its Charter Within This State." The parties agree that it is an excise or franchise tax, and that the title correctly describes it. The property of the corporation is not taxed, neither is its capital stock. Values of property and gross receipts are used as factors to determine the number of shares of the corporate stock that measures the tax "for the privilege of carrying on, doing business, or the continuance of its charter within the State" but are not subjects of the tax.

█ Certain contentions of appellee, with reference to the construction of the statute and constitutionality of the tax may be here disposed of. It is stated in appellee's brief: "While the New Mexico statute limits the 'property' to that owned in the state in the process of determining the tax, it places no limitation upon the business transacted within the state, and, therefore, leaves the Commission free to include interstate as well as intrastate business in its process of determining the proportions of the capital stock to be allocated to the state of New Mexico for the purpose of fixing the amount of the tax."

"Business in this state" means just that. It does not mean business across state lines, but that transacted wholly within the state. It cannot be assumed, except for compelling reasons that we do not find to exist, that the Legislature intended a meaning that would render the act unconstitutional. Green v. Frazier, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878. Appellee takes an inconsistent position later, and agrees with our construction in asserting a proposition that would render its tax nominal in amount. It states in its brief:

"* * * The legislative intention in the use of the term 'property and business in

this state' as a measure of the taxable capital stock, is disclosed in the provisions of said section 4 of the act, which undertakes to prescribe the information which shall be shown by the corporation's return for the purpose of calculation of the tax. * * * Paragraph 8, however, of the section appears to be the key to the construction of the material tax provisions of the Act, in providing that 'the total gross receipts derived from its property and business, both within and without this state during the last preceding year' shall be reported and used as a basis for calculating the tax. * * *

"The total gross receipts derived from property and business within the state and the total gross receipts derived from property and business without the state, required to be reported by paragraph 8, would give the factors for a calculation of the total gross receipts derived from all property and business of the taxpayer, and the percentage of the intrastate revenues to the whole revenues would be simply a matter of calculation."

Appellee seems thus to conclude that "business within the state" has reference to intrastate business; to which we agree. But the words "property and business in this state" cannot be limited to business alone; it would contradict the plain wording of the statute, and we need not discuss it further than to state our disagreement. The word "property" speaks for itself, and as the statute specifically excludes as a factor for determining the tax all property of any foreign corporation situated without the state and that used exclusively in interstate commerce, there remains all property of such corporation within the state not so used; which includes property used for both interstate and intrastate business, as well as that used exclusively for intrastate business, the value of which is to be used as one of the factors in determining that proportion of the authorized and issued capital stock of a foreign corporation represented by its property and business in this state.

Appellee states: "New Mexico cannot impose property taxation and then impose a franchise tax measured by the value of the same property without clearly imposing a double ad valorem tax." But the trouble is the Supreme Court of the United States, which has the last word on this very question, has expressed its disagreement with appellee's views.

In Western Cartridge Co. v. Emmerson, 281 U.S. 511, 50 S.Ct. 383, 384, 74 L.Ed. 1004, a statute of Illinois (Smith-Hurd Ill. Stats. c. 32, § 157. 131 note) was held valid, which is as follows: "Each corporation for profit, . * * * except insurance companies, * * * organized under the laws of this State or admitted to do business in this State, * * * shall pay an annual license fee or franchise tax * * * of five cents on each one hundred dollars of the proportion of its authorized capital stock represented by business transacted and property located in this state." The petitioner corporation had issued in round

numbers $5,700,000 par value capital stock; it owned property of the value of $6,925,000, of which $6,800,000 was situated in Illinois; its business for the year amounted to $11,671,000 of which $1,900,000 was intrastate and $9,750,000 was shipped outside the state.

"Respondent treated all of petitioner's business as having been transacted in Illinois and based the tax on such proportion of its outstanding capital stock as its business plus its Illinois property was of such business and all its property. The tax so calculated amounted to $2,808.03, a substantial part of which resulted from the inclusion of the transactions reported by petitioner as interstate commerce.* * *

"Unquestionably Illinois has power to tax all petitioner's property therein without regard to its use in connection with interstate transactions and to impose a license fee or excise upon petitioner's local business. [authorities] The tax in question was not laid directly upon interstate commerce or any of its elements. For the determination of the amount the taxpayer's business and property located in Illinois is divided by the total of all its business and property and that percentage is applied to the issued shares and the resulting number taken for taxation at the rate of 5 cents per $100. As the amount depends on the relation each to the others of the various elements employed in the calculation, the fee or tax does not directly depend upon the amount of the taxpayer's interstate transactions. The exaction may arise while the sales to customers outside Illinois decline and may fall while such sales increase."

It was held that this tax was not a burden upon interstate commerce.

"The mere fact that a corporation is engaged in interstate commerce does not exempt its property from state taxation. [citing authorities]. It is the commerce itself which must not be burdened by state exactions which interfere with the exclusive Federal authority over it. A resort to the receipts of property or capital employed in part, at least, in interstate commerce, when such receipts or capital are not taxed as such, but are taken as a mere measure of a tax of lawful authority within the state, has been sustained." Baltic Mining Co. v. Massachusetts, 231 U.S. 68, 34 S.Ct. 15, 17, 58 L.Ed. 127.

The State of North Carolina provided for a railway franchise tax equal to one-tenth of one per cent. of the value of the company's property within the state. In Southern Railway Co. v. Watts, 260 U.S. 519, 43 S.Ct. 192, 197, 67 L.Ed. 375, it was stated by the Supreme Court of the United States, on the question of the statute's constitutionality: "It is argued that this franchise tax is an additional property tax which is not imposed on others, and that, consequently, it violates the uniformity clause of the state Constitution and the equal protection clause of the federal Constitution. It is true that the franchise tax is measured by the value of property already subjected to the ad valorem tax. But a privilege tax is not converted into a prop-

erty tax because it is measured by the value of property [authority]; nor by the fact that in this measure is included property not used in the transportation service. Railroads differ in so many respects from other properties that they may, as a class, be taxed differently or additionally, if that is not inconsistent with the Constitution of the state."

The Supreme Court of the United States held constitutional an excise tax of the State of Massachusetts, somewhat similar to that of New Mexico, and said:

"The statute provides that every foreign corporation shall pay annually 'with respect to the carrying on or doing of business by it within the Commonwealth,' an excise consisting in part of an amount 'equal to five dollars per thousand upon the value of the corporate excess employed by it within the Commonwealth,' which is defined as 'such proportion of the fair cash value of all the shares constituting the capital stock * * * as the value of the assets, both real and personal, employed in any business within the commonwealth * * * bears to the value of the total assets of the corporation,' * * *

"It is settled law that a State may lawfully impose upon a foreign corporation a tax for the privilege of doing business within its borders which is measured by the proportionate part of its total gross receipts that are received within the State, [authority]; or by the proportionate part of its total capital stock which is represented by the property located and business transact-ed within the State [authorities]; or by the proportionate part of its total net income which is attributable to the business carried on within the State." National Leather Co. v. Commonwealth of Massachusetts, 277 U. S. 413, 48 S.Ct. 534, 72 L.Ed. 935.

A like conclusion was reached by the Supreme Court of the United States regarding an Illinois statute.

"The statute under which the tax was assessed reads: 'It shall be the duty of the Secretary of State to propound interrogatories from time to time to officers of such foreign corporations (with negligible exceptions) doing business in this state to ascertain the proportion of capital stock actually being represented by property located and business transacted in the state of Illinois, which porportion shall be determined by averaging the percentage of the total business of the corporation transacted in Illinois with the percentage of the total tangible property located in this state.' * * *

"The tax is not imposed directly upon the proceeds of interstate commerce and is not computed upon it. The $235,000 of interstate business of the company is only one of three factors used in estimating or measuring 'the amount of the capital stock represented by property and business trans-acted in Illinois,' upon which the privilege tax in dispute was computed. The other two factors were $5,540,000 of property in Illinois and $25,000 of business stipulated as done with residents of that state. If the fee or privilege tax were computed at the

statutory rate on the whole of the interstate business, it would be trifling in amount, but if computed on the property admitted to have been in use in the state it would be but slightly less than the tax collected.`

"If this same amount of tax had been imposed upon such a manufacturing corporation as we have here without reference being made to the basis of its computation, very certainly no objection to its validity would have been thought of." Hump Hairpin Mfg. Co. v. Louis L. Emmerson, 258 U.S. 290, 42 S.Ct. 305, 306, 66 L.Ed. 622.

An Arkansas statute (Acts 1911, pp. 69, 70, §§ 4, 6) provided: "Each foreign corporation for profit, doing business in the State, and owning or using a part or all of its capital or plant in this State," to pay "for the privilege of exercising its franchise in this State, one-twentieth of one per cent. each year thereafter upon the proportion of the outstanding capital stock of the corporation represented by property owned and used in business transacted in this state." The Supreme Court of the United States copied from the decision of the state court from which the cause was appealed (106 Ark. 321, 152 S.W. 110), and among other things stated:

"We therefore accept the construction of Act No. 112 that we have quoted from the opinion of the state court, which is, in short, that it imposes an annual franchise tax upon the right to exist as a corporation or to exercise corporate powers within the state, the amount of the tax being fixed solely by reference to the property of the corporation that is within the state and used in business transacted within the state, and excluding any imposition upon or interference with interstate commerce. * * *

"So, in Atlantic & P. Tele. Co. v. Philadelphia, 190 U.S. 160, 23 S.Ct. 817, 47 L.Ed. 995, the court, reviewing numerous previous cases, laid down certain propositions as well-established, and among them the following: (a) No state can compel a party, individual, or corporation, to pay for the privilege of engaging in interstate commerce; (b) this immunity does not prevent a state from imposing ordinary property taxes upon property having a situs within its territory, although it be employed in interstate commerce; and (c) the franchise of a corporation, although that franchise is the business of interstate commerce, is, as a part of its property, subject to state taxation, provided, at least, the franchise is not derived from the United States.

"Applying these principles, we have no difficulty in sustaining the tax in question as a legitimate imposition upon a foreign corporation with respect to its exercise of the privilege of transacting intrastate business in corporate form, the tax being based upon the amount and value of its property within the state. It is fixed at a definite percentage (1/20 of 1 per cent) of 'the proportion of the outstanding capital stock of the corporation represented by property owned and used in business transacted in

this state.' It is not contended that there is here any substantial discrimination. The gist of the criticism seems to be that the two acts in question subject the property of plaintiff in error, as well as that of all other corporations that are within the operation of those acts, to double taxation, and that this is a denial of 'equal protection' in favor of other classes of taxpayers." St. Louis S. W. Ry. Co. v. State of Arkansas, 235 U.S. 350, 35 S.Ct. 99, 102, 59 L.Ed. 265.

The statute was held not subject to any constitutional inhibitions.

Section 181, article 9, of the Tax Law of New York (chapter 62, L. of 1909, as amended [Consol.Laws, c. 60]), imposes on every foreign corporation doing business in that state a tax computed upon the basis of the capital stock employed by it within the state during the first year it does business there; the amount of its stock so employed being that proportion of its total issued capital stock which its gross assets employed within the state bear to its gross assets wherever employed. This statute was held valid by the Supreme Court of the United States. People of State of New York v. Latrobe et al., 279 U.S. 421, 49 S. Ct. 377, 73 L.Ed. 776, 65 A.L.R. 1341.

Also see Southern Ry. Co. v. Commonwealth of Kentucky, 274 U.S. 76, 47 S.Ct. 542, 71 L.Ed. 934; Judson Freight Forwarding Co. v. Commonwealth of Mass., 242 Mass. 47, 136 N.E. 375, 27 A.L.R. 1131; Old Dominion Steamship Co. v. Virginia, 198 U.S. 299, 25 S.Ct. 686, 49 L.Ed. 1059, 3 Ann.Cas. 1100; Pacific Tel. & Teleg. Co. v. Tax Commission of State of Wash., 297 U.S. 403, 56 S.Ct. 522, 80 L.Ed. 760, 105 A. L.R. 1; Roberts & Schaefer Co. v. Emmerson, 271 U.S. 50, 46 S.Ct. 375, 70 L.Ed. 827, 45 A.L.R. 1495.

■ The appellee states that "property and gross receipts" can no more be added than "hens and eggs," and therefore the statute has no clear basis for establishing the capital stock. It is unnecessary for us to worry over the addible qualities of poultry and its fruit. When reduced to dollars "hens and eggs" may be added and we apprehend the same may be said of property and gross receipts. In any event, the feat has been accomplished more than once and sustained as permissible, if not approved as scientific, by high authority. Great Northern Ry. Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532; People of State of New York v. Latrobe et al., supra; Roberts & Schaefer Co. v. Emmerson, supra; Chicago, M., St. P. & P. R. Co. v. Harmon, 89 Mont. 1, 295 P. 762; State v. Pierce Pet. Corp., 318 Mo. 1020, 2 S.W. (2d) 790.

■ The demurrer admits that the intrastate business for 1934 was $196,674, which was a loss; that approximately a half million dollars was paid in ad valorem taxes; that the franchise tax imposed "can only be paid by petitioner out of its interstate revenues, thereby imposing a burden upon its interstate business, thus contravening the commerce clause of the national constitution." The whole state and county

ad valorem tax may not be charged against the intrastate gross income to create a deficit. It could be levied against the appellee's property in this state, if its business was wholly interstate. Pacific Tel. & Teleg. Co. v. Tax Commission, supra. No other figures are given whereby it may be determined if there is in fact a loss, and if so, the amount of it.

It may be that an abandonment of the intrastate business would entail a still greater loss on appellee's interstate business, in which case the loss would not exist in fact.

The case is not unlike that of Pacific Tel. & Teleg. Co. v. Tax Commission, supra.

"A finding that the statute, though fair upon its face, is oppressive toward the railway in its practical operation cannot rest upon so fragmentary and partial a showing of facts. We must bear in mind steadily that the burden is on the taxpayer to make oppression manifest by clear and cogent evidence." Norfolk & W. R. Co. v. North Carolina, 297 U.S. 682, 56 S.Ct. 625, 628, 80 L.Ed. 977.

The facts alleged and admitted do not establish that the operation of the statute burdens appellee's interstate business. Great Northern R. Co. v. Weeks, supra; People of State of New York v. Latrobe et al., supra; Roberts & Schaefer Co. v. Emmerson, supra; Hump Hairpin Mfg. Co. v. Emmerson, supra; Chicago, M., St. P. & P. R. Co. v. Harmon, 89 Mont. 1, 295 P. 762; State v. Pierce Pet. Corp., 318 Mo. 1020, 2 S.W.(2d) 790.

Section 5 of the act provides: "The capital stock of foreign and domestic corporations for profit having no fixed par value shall be presumed to have a par value of one hundred dollars ($100.00) per share, but such value shall be subject to examination and revision by the State Corporation Commission from the information contained in the report by the said corporation, as herein provided, and from any other information obtained by the Corporation Commission, but in no event shall such value be less than as shown on the books of the said corporation."

Appellee's stock is of the market value of $16 and of the par value of $100, and the statute requires assessments thereon at its par value; whereas assessment of no par value stock is on a different basis. Is there such discrimination against appellee and others similarly situated as to deny them the equal protection of the laws, so that the act runs counter to section 1 of the Fourteenth Amendment of the Federal Constitution?

This question has been before the courts many times and decided against appellee's contention. There are sufficient differences of importance between the two classes of stock to authorize this classification. People of the State of New York v. Latrobe, 279 U.S. 421, 49 S.Ct. 377, 73 L.Ed. 776 and note, 65 A.L.R. 1341; Roberts & Schaefer Co. v. Emmerson, 271 U.S. 50, 46 S.Ct. 375, 70 L.Ed. 827, 45 A.L.R. 1502 and note; State v. Pierce Pet. Corp., supra; also see annotation in 36 A.L.R. 794.

The cause will be reversed and remanded with instructions to the district court to sustain appellant's demurrer to appellee's petition for certiorari.

It is so ordered.

SADLER, BICKLEY, and ZINN, JJ., concur.

HUDSPETH, C. J., did not participate.